[No. B062486. Second Dist., Div. One. June 11, 1994.]

SAM TORRES, Plaintiff and Appellant, v.
COOL CARRIERS A.B., Defendant and Respondent.

## COUNSEL

Kenneth C. Wikle and Conrad Lopes for Plaintiff and Appellant.

Flynn, Delich & Wise and Nicholas S. Politis for Defendant and Respondent.

## OPINION

**ORTEGA, J.**—This appeal involves a longshoreman's personal injury action under federal maritime law against the time charterer of a vessel. We affirm the summary judgment for the defendant.

### BACKGROUND

Plaintiff Sam Torres worked as a longshoreman in the Port of Long Beach. On April 22, 1987, Torres was injured while working in the hold of the vessel Spring Bear. ▮▮▮▮ Torres sued, among others, the vessel (owned by Zeerederij Zuid-Holland B.V.) and the vessel's time charterer,[1] Cool Carriers (Svenska) A.B. Cool Carriers is the only defendant involved in this appeal.

In 1985 Cool Carriers contracted with Torres's employer, Metropolitan Stevedore Company, for the loading of cargoes onto vessels "owned, operated, or otherwise controlled by [Cool Carriers] at Los Angeles/Long Beach harbors" for a five-year term. It was pursuant to this stevedoring contract that Torres was loading cargo onto the Spring Bear when he was injured on April 22, 1987.

Torres alleges liability against Cool Carriers for the injuries he sustained when "a pallet jack he was operating struck a weak spot in the deck gratings, causing the jack to stop abruptly and topple boxes onto" him. (Torres also claimed below, but not on appeal, that the vessel's list contributed to the accident.) For purposes of our review, we will assume, as have the parties, that the defective deck gratings caused plaintiff's accident. The primary issue on appeal is whether Cool Carriers has established, as a matter of law, that it owed no duty to correct or warn Torres of the defective deck gratings.

---

[1] A time charter contract is also called a charter party.

"In the traditional time-charter arrangement, the charterer directs the commercial activities of the boat, but [¶] 'the owner's people continue to navigate and manage the vessel. . . . The time charter is used where the charterer's affairs make it desirable for him to have tonnage under his control for a period of time, without undertaking the responsibilities of ship navigation and management or the long-term financial commitments of vessel ownership.' [Citation.] 'Possession and control remain with the owner and the ship is operated by its regular crew, but the charterer determines the ship's routes and destinations.' [Citation.] 'Generally . . . a time charterer, one who has no control over the vessel, assumes no liability for negligence of the crew or unseaworthiness of the vessel absent a showing that the parties to the charter intended otherwise.' [Citation.]" (*Kerr-McGee Corp.* v. *Ma-Ju Marine Services, Inc.* (5th Cir. 1987) 830 F.2d 1332, 1340-1341.)

Cool Carriers moved for summary judgment (and alternatively, for summary adjudication of issues) on the ground that the charter party, as well as general maritime law, placed responsibility for maintaining the vessel on the owner, not the time charterer. Cool Carriers contended the vessel's owner and crew were not acting as its agents with respect to the maintenance and repair of the deck gratings.

In support of its motion, Cool Carriers submitted the declaration of Lars Rutberg, its tropical fruit division manager, which stated among other things that Cool Carriers "did not employ or supervise the officers or crew of the vessel SPRING BEAR, or employ any individuals onboard the vessel SPRING BEAR at any time during the pendency of the charter party." Rutberg further stated that "the vessel owner[] bore sole responsibility for maintenance and repair of gratings, grating supports and other vessel equipment onboard the SPRING BEAR, and Cool Carriers undertook no such maintenance or repair functions during the pendency of the charter party."

In addition, Cool Carriers submitted the charter party, a form agreement called the "Reefer Uniform Charter Party," which was executed in February 1985. With regard to the maintenance and repair of deck gratings, paragraph 12 of the charter party stated in part: "The Owners shall maintain the gratings in good condition, well fitting and sound. The gratings to be thoroughly inspected upon completion of discharge and damage, if any, to be properly repaired before next loading. [¶] Charterers or their representatives have the right to inspect the condition of the gratings at all times. [¶] The Vessel shall keep a sufficient stock of spare gratings and material aboard."

In opposition to Cool Carriers' motion, Torres contended the charter party and the stevedoring contract had shifted the owner's traditional responsibility for maintaining the deck grating to Cool Carriers. Torres offered the following analysis: (1) under paragraph 43 of the charter party,[2] the vessel's master and crew are the charterer's agents during loading operations; (2) under paragraph 12 of the charter party, Cool Carriers had the right and obligation to inspect the gratings either through its agents (the vessel's crew) or independently; and (3) under paragraphs I, V, and VIII of the stevedoring

---

[2]Paragraph 43 of the charter party stated: "The Master shall supervise the loading and the discharging and both prosecute his voyages, and ensure that loading and discharging are carried out with the utmost d[i]spatch and care, shall render all customary assistance with the Vessel's Crew, tackle and boats as if the Vessel were trading for Owners' own account. Master shall be under the orders and directions of the Charterers as regards Vessel's speed, employment, agency and other arrangements necessary for the Charterers' use of the Vessel. [¶] If the Charterers shall have reason to be dissatisfied with the Master or any of the Officers or Crew, the Owners on receiving particulars of their complaint, promptly to investigate the matter and if necessary and practicable, to make a change in the appointment."

contract,[3] Cool Carriers (a) admitted it had control of the vessel during loading operations, (b) promised to "furnish proper and safe apparel," and (c) admitted, by its agreement to pay extra costs if the stevedore company repaired deck gratings, that Cool Carriers' custom is to have the vessel's crew repair deck gratings in order to avoid extra costs under the stevedoring contract.

The trial court granted Cool Carriers' motion for summary judgment, finding the charter party required the vessel owner to maintain and repair the deck gratings, and to correct any list of the vessel. The trial court rejected Torres's claim that the vessel's master and crew were the agents of Cool Carriers with regard to those functions. In addition, the trial court found the stevedoring contract did not impose on Cool Carriers a duty to maintain or repair the deck gratings or correct any list of the vessel.

Torres appeals from the summary judgment.

## Discussion

■ After examining the facts before the trial judge on a summary judgment motion, an appellate court independently determines their effect as a matter of law. (*Bonus-Bilt, Inc.* v. *United Grocers, Ltd.* (1982) 136

---

[3]The portions of the stevedoring contract relied upon by Torres stated as follows:

"This Agreement made and entered into this 1st day of January, 1986 between Cool Carriers, AB, as Owner, Operator, Charterer, or Agent, hereinafter called the Steamship Company, and Metropolitan Stevedore Company, hereinafter called the Contractor, provides as follows:

"I

"It is mutually agreed between the parties hereto, that the Contractor will act as Stevedores, and that they will with all possible dispatch load cargoes specified in Schedule A to vessels owned, operated, or otherwise controlled by the Steamship Company at Los Angeles/Long Beach harbors as directed. And it is agreed that the Steamship Company will grant to the said Contractor the exclusive right of handling all such cargoes as before mentioned in accordance with the terms and conditions herein specified.

". . . . . . . . . . . . . . . . . . . . . . . . .

"V

"It is mutually agreed and understood that the vessel is to furnish proper and safe apparel, including properly rigged booms, winches and power for their proper operation, and sufficient lighting on the vessel for night work.

". . . . . . . . . . . . . . . . . . . . . . . . .

"VIII

". . . [¶] The following items will be considered as extra labor: [¶] . . . [¶] (e) Building and removing false decks or special wooden floors. [¶] . . . [¶] "(l) Laying and/or removing walking boards and runways necessary to permit use of lift trucks and electric jacks in hatch compartments for machine stowage of cargoes."

Cal.App.3d 429, 442 [186 Cal.Rptr. 357].) Where, as here, ". . . the meaning of writings is in dispute, 'in the absence of conflicting evidence, the question is one of law, and . . . the reviewing court will give the writing its own independent interpretation. . . .' [Citations.]" (*Stratton* v. *First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1084 [258 Cal.Rptr. 721]; see *Suburban Motors, Inc.* v. *State Farm Mut. Auto. Ins. Co.* (1990) 218 Cal.App.3d 1354, 1359 [268 Cal.Rptr. 16].)

This is an action under section 5(b) of the Longshore and Harbor Workers' Compensation Act (33 U.S.C. § 905(b), hereafter LHWCA) "which permits covered employees to sue the 'vessel' for its negligence[.]" (*Kerr-McGee Corp.* v. *Ma-Ju Marine Services, Inc., supra,* 830 F.2d at p. 1338.) "Section 2(21) of the LHWCA defines 'vessel' as meaning the vessel upon or in connection with which a covered employee is injured in the course of his employment, 'and said vessel's owner, owner pro hac vice, agent, operator, charter or bare boat charterer, master, officer, or crew member.' 33 U.S.C. § 902(21). Although 'time-charterer' is not specifically mentioned in the definition, [federal decisions] have held that it is included. [Citations.]" (*Ibid.*) The parties in this case do not dispute Torres's right to bring an action under section 5(b) of the LHWCA against Cool Carriers as time charterer of the Spring Bear.

 In determining Cool Carriers' liability under section 5(b) of the LHWCA, we must examine both Cool Carriers' obligations toward the vessel under the charter party and Cool Carriers' duty to Torres. (See *Kerr-McGee Corp.* v. *Ma-Ju Marine Services, Inc., supra,* 830 F.2d at pp. 1339-1340.) "[I]n cases where the defendant's legal relationship to the vessel does not impose the right and duty of control, no section 5(b) liability attaches." (*Id.* at p. 1343.) "[A] time-charterer is not liable under section 5(b) unless the cause of the harm is within the charterer's traditional sphere of control and responsibility or has been transferred thereto by the clear language of the charter agreement. [Citation.]" (*Ibid.*)

A review of several contrasting decisions concerning the time charterer's liability under section 5(b) of the LHWCA is helpful to our analysis. In *Kerr-McGee Corp.* v. *Ma-Ju Marine Services, Inc., supra,* 830 F.2d 1332, an indemnity action between the time charterer (Kerr-McGee) and the vessel owner (Ma-Ju), the court found the responsibility for maintaining and operating the vessel remained with the vessel owner and thus absolved the time charterer of liability under section 5(b). Kerr-McGee had time-chartered a vessel from Ma-Ju to transport Kerr-McGee's employees to offshore oil and gas wells. One of Kerr-McGee's employees, Lyons, was injured when the

vessel lurched and she fell off the steps while descending to the main deck. Lyons claimed the vessel's steps were too steep and lacked adequate handrails and nonskid paint. The charter party stated, consistent with tradition, that it was the owner's duty to maintain the vessel, equipment, apparel and appliances in good condition. The court concluded Kerr-McGee, the time charterer, had no liability under section 5(b) as a matter of law.

In contrast, in *Turner* v. *Japan Lines, Ltd.* (9th Cir. 1981) 651 F.2d 1300, the court found the charter party had transferred the responsibility for overseeing the onloading of cargo from the vessel owner to the time charterer and thus required the time charterer to indemnify the vessel owner. Turner, a longshoreman, was injured while unloading plywood from a vessel in Washington. Turner sued the vessel's owner, Philippine President Lines, and the time charterer, Japan Lines, Ltd. The uncontradicted evidence at trial established that the improper shoring of the plywood during loading in Japan had caused the plywood to collapse and strike Turner during unloading. Japan Lines, the time charterer, had hired the negligent onloading stevedore firm.

The jury in *Turner* returned a verdict against both the vessel owner and the time charterer. The trial court, however, granted the defendants' motion for judgment notwithstanding the verdict (JNOV). On appeal, the Ninth Circuit reversed the JNOV. The court found that while the vessel owed a duty to protect Turner against the negligent shoring, the charter party had transferred to the time charterer the responsibility for injuries to longshoremen caused by the negligent supervision of cargo operations. (*Turner* v. *Japan Lines, Ltd.*, *supra*, 651 F.2d at p. 1306) The form charter party at issue in *Turner* (the New York Produce Exchange Form) provided in relevant part: " '. . . Charterers are to load, stow and trim and discharge the cargo at their expense and risk under the supervision of the Captain. . . .' " (*Id.* at p. 1305, fn. 4.) This clause has been found by both the Second and Ninth Circuits to make "the time-charterer primarily liable for any injury to cargo or longshoremen which results from the improper performance of those operations." (*Id.* at p. 1306, citing *Fernandez* v. *Chios Shipping Co., Ltd.* (2d Cir. 1976) 542 F.2d 145, 151-153.)

However, the same clause of the New York Produce Exchange Form involved in *Turner* was analyzed by the Eleventh Circuit and found not to transfer from the owner to the time charterer the duty to maintain the vessel's cargo doors. (*Hayes* v. *Wilh Wilhelmsen Enterprises, Ltd.* (11th Cir. 1987) 818 F.2d 1557.) While loading the cargo onto the vessel, the plaintiff longshoreman in *Hayes* slipped and fell on hydraulic fluid which had leaked

from the cargo door's hoses onto the deck. The court held that the time charterer owed no duty, as a matter of law, to protect against or warn the longshoreman of the leaking hydraulic fluid. (*Id.* at p. 1560.)

Turning to the stipulated facts of this case, we find the evidence establishes, as a matter of law, that Cool Carriers was not obligated to protect against or warn Torres of the defective deck gratings. Paragraph 12 of the charter party placed that responsibility upon the owner of the vessel, which is consistent with maritime tradition. Further, there is no evidence to support a finding of agency with regard to the maintenance of the deck gratings. The vessel's master and crew did not become the agents of the time charterer in maintaining and repairing the deck gratings, notwithstanding Cool Carriers' right to inspect the deck gratings.

As for the stevedoring contract, we disagree with Torres's interpretation of that document. Focusing on paragraph V ("the vessel is to furnish proper and safe apparel, including properly rigged booms, winches and power for their proper operation, and sufficient lighting on the vessel for night work"), Torres contends the term "vessel" refers to Cool Carriers. The introductory paragraph of the contract, however, dispels that notion by stating Cool Carriers would be called "the Steamship Company." Whether or not the term "apparel" includes deck gratings, as Torres contends,[4] is irrelevant to our decision because the plain language of paragraph V states that the vessel, and not the Steamship Company, will provide the apparel. Accordingly, paragraph V does not obligate Cool Carriers to provide the ship's apparel.

Torres's reliance on the finding of liability against the time charterer in *Turner* v. *Japan Lines, Ltd., supra,* 651 F.2d 1300 is misplaced. Here there is no evidence that the owner and crew acted as the time charterer's agents with regard to the repair and maintenance of the deck gratings. This case is factually closer to *Hayes* v. *Wilh Wilhelmsen Enterprises, Ltd., supra,* 818 F.2d 1557 or *Kerr-McGee Corp.* v. *Ma-Ju Marine Services, Inc., supra,* 830 F.2d 1332, where the time charterer was not held liable under section 5(b) of the LHWCA.

We conclude, as a matter of law, that Cool Carriers owed no duty to Torres under section 5(b) of the LHWCA to protect against or warn him of the defective deck gratings.

---

[4]"Apparel," according to its historical and dictionary meaning, refers to a ship's equipment, including the sails and rigging. (See Webster's New Collegiate Dict. (9th ed. 1983) p. 96 ["the equipment (as sails and rigging) of a ship"].)

## DISPOSITION

We affirm the summary judgment. Respondent is awarded costs on appeal.

Spencer, P. J., and Vogel (Miriam A.), J., concurred.