Opinion
 

 RUVOLO, J.
 

 I. Introduction
 

 Appellant John Hancock Mutual Life Insurance Co. (Hancock) appeals after the trial court sustained a demurrer to its complaint against its insured, respondent Benjamin J. Greer, M.D. (Greer). Hancock’s complaint seeks rescission of its disability insurance policy issued to Greer six years earlier because of alleged material misrepresentations made by him in his application for insurance. The trial court granted Greer’s demurrer without leave to amend after concluding that the policy’s incontestability clause barred Hancock’s action.
 

 The statutorily required incontestability clause which is at the center of this controversy provides: “After this policy has been in force for two years during your lifetime and during which you have not been disabled, we cannot contest any statements in the application which is attached to this policy on the Date of Issue.” (See Ins. Code, § 10350.2.)
 
 [1]
 
 The sole issue in this appeal is whether the disability which tolls the running of the two-year contestability period refers to a disability as defined by the policy language, as Greer contends, or whether it encompasses all conditions that fall under the general dictionary definition of disability, as Hancock contends. We hold that the language in the incontestability clause, which provides for the tolling of the two-year contestability period
 
 while the insured is disabled,
 
 applies only to a disability which falls within the policy coverage. Consequently, we affirm.
 

 II. Facts and Procedural History
 

 On review of a grant of demurrer, all facts in the pleadings are deemed to be true.
 
 (Pacific Gas & Electric Co.
 
 v.
 
 City of San Jose
 
 (1985) 172
 
 *880
 
 Cal.App.3d 598 [218 Cal.Rptr. 400].) Hancock’s pleadings state that on or about December 1989, Greer submitted an application to Hancock for an individual disability policy. The policy only provided insurance coverage in the event of a total disability. “Total disability” was described in the policy by the following standards: “It begins while the policy is in force. It’s due to injury or sickness. It requires the regular care of a physician. It prevents you from performing the material duties of your regular occupation.”
 

 Greer’s application reflected no significant adverse medical history. Greer answered “No” to the question, “Have you . . . ever been treated for or had any known indication of disease or disorder of the neck, back, spine, . . .” Greer also stated “None” when asked to identify the name and address of his personal physician. In signing the application, Greer affirmed that his answers were to the best of his knowledge and belief, complete, true and correctly recorded. Greer did not disclose on the application that on or about October 25, 1988, he fell in his office and sustained an injury to his lower back that created a partially disabling condition that has become chronic and has significantly impacted his lifestyle and work.
 

 As already noted, the policy contained the following incontestability clause: “After this policy has been in force for two years during your lifetime and during which you have not been disabled, we cannot contest any statements in the application which is attached to this policy on the Date of Issue.” As we will discuss more fully, such an incontestability clause is statutorily mandated by section 10350.2.
 

 Greer’s initial application was not fully underwritten within 60 days. As a result, in March 1990, Hancock re-offered the policy to Greer, conditioned upon Greer’s execution of an amendment confirming that there was no change in insurability since the completion of his original application. In reliance upon Greer’s statements and representations contained in his 1989 application and the 1990 amendment, Hancock issued a disability income policy to Greer.
 

 Six years later, on May 31, 1996, Hancock notified Greer it was rescinding the disability policy based on Greer’s failure to disclose information about his back injury. Prior to Hancock’s notification of rescission, Greer had not made a claim for benefits under the policy. Hancock also tendered a check for all premiums paid by Greer in the amount of $10,721.20. Greer returned the $10,721.20 check to Hancock, asserting that Hancock’s attempt to rescind Greer’s disability policy based upon claims of fraud or misrepresentation in the procurement of the policy was barred by the policy’s incontestability clause.
 

 
 *881
 
 Hancock filed this declaratory relief action, seeking a judicial determination of the nature and extent of its obligations, if any, under the disability policy issued to Greer. (Code Civ. Proc., § 1060.) Hancock asserted that the policy was properly rescinded because Greer’s undisclosed back injury constituted a disability within the meaning of the incontestability clause which tolled the running of the two-year period. Greer filed a demurrer to Hancock’s complaint, contending the policy could not be rescinded because it was undisputed that his preexisting, undisclosed back condition was only partially disabling and outside the policy’s coverage, which required a completely debilitating condition. Greer contended the language of the incontestability clause, when read in conjunction with its enabling statute, permitted no other reading but that the disability must be one covered by the policy in order to toll the two-year contestability period.
 

 Therefore, the issue before the court was whether Greer was “disabled” within the two-year time period, thereby extending the time during which Hancock could contest the policy. The trial court entered judgment for Greer after concluding Hancock could not rely on Greer’s partial disability to avoid the incontestability clause. The trial court held, “The statutory scheme of California Insurance Code [s]ection 10350.2 mandates that the definition of ‘disability’ is only as it is defined in the policy.” The parties agree that we give this dispute de novo review.
 
 [2]
 
 (See
 
 Hernandez
 
 v.
 
 City of Ponoma
 
 (1996) 49 Cal.App.4th 1492, 1497 [57 Cal.Rptr.2d 406].)
 

 III. Discussion
 

 According to the California Supreme Court: “[w]hen an insurance policy by its provisions is made incontestable after a specified period, the intent of the parties is to fix a limited time within which the insurer must discover and assert any grounds it might have to justify a rescission of the contract.”
 
 (New York Life Ins. Co.
 
 v.
 
 Hollender
 
 (1951) 38 Cal.2d 73, 78 [237 P.2d 510].) “The incontestability bar acts as a ‘statute of repose’ for the beneficiaries of policies, and establishes a limited period of time for insurers to investigate and discover possible fraud by their insureds. [Citations.]”
 
 (United Fidelity Life Ins. Co.
 
 v.
 
 Emert
 
 (1996) 49 Cal.App.4th 941, 945 [57 Cal.Rptr.2d 14].) Incontestability clauses are given broad effect and are strictly enforced in this state even in the face of gross fraud in procuring the policy. (See, e.g.,
 
 Amex Life Assurance Co.
 
 v.
 
 Superior Court
 
 (1997) 14
 
 *882
 
 Cal.4th 1231,1237 [60 Cal.Rptr.2d 898, 930 P.2d 1264];
 
 United Fidelity Life Ins. Co.
 
 v.
 
 Emert, supra,
 
 49 Cal.App.4th at p. 944.) “ ‘The view is that even though dishonest people are given advantages under incontestability clauses which any right-minded man is loath to see them get, still the sense of security given to the great majority of honest policyholders by the presence of the clause in their policies makes it worth the cost. The time allowed to the insurance company after issuance of the policy to investigate the case and uncover any fraud is deemed a fair check against trickery or deception by the insured.’ ”
 
 (Amex Life Assurance Co.
 
 v.
 
 Superior Court, supra,
 
 14 Cal.4th at p. 1239, quoting
 
 Mastín
 
 v.
 
 Columbian Nat. Life Ins. Co.
 
 (S.D.N.Y. 1932) 3 F.Supp. 368.)
 

 The language contained in the incontestability clause in Greer’s policy is mandated by section 10350.2. Section 10350.2 was adopted by the California Legislature in 1951 at the request of the Department of Insurance. (Stats. 1951, ch. 570, § 11, pp. 1724-1725; letter of Insurance Commissioner to Governor (May 10, 1951) regarding Assem. Bill No. 524; see also letter of Deputy Attorney General Harold B. Hass to Governor (May 14, 1951) regarding Assem. Bill No. 524.) It is identical to a model incontestability clause for disability policies drafted in 1950 after several years of study by the National Association of Insurance Commissioners (NAIC). If the NAIC’s exercise in legislative draftsmanship has created a model, it appears to be a model of complexity. This dissatisfaction with the final product was apparently shared by the NAIC drafters themselves. An article providing insight into the NAIC drafting process reports that “no one was fully satisfied with the language finally adopted, but that language represented the best compromise of various views.” (Notes (1952) 27 N.Y.U. L.Rev. 670, 674-675, fn. omitted.) Although numerous courts have complained about the inartful, confusing, and ambiguous language used in the model incontestability clause, almost every state has enacted legislation adopting its language.
 
 (Johnson
 
 v.
 
 Metropolitan Life Insurance Company
 
 (1969) 53 N.J. 423 [251 A.2d 257, 265] [model provision “unhappily phrased”]; accord,
 
 Sutton
 
 v.
 
 American Health & Life Ins. Co.
 
 (4th Cir. 1982) 683 F.2d 92, 94; see also
 
 Velez-Gomez
 
 v.
 
 SMA Life Assur. Co.
 
 (1st Cir. 1993) 8 F.3d 873, 876.)
 

 Section 10350.2 provides that a disability policy must contain a provision conforming to one of the two forms set forth in the statute. The form selected by the insurer has an important bearing on whether the insurer is permitted to seek rescission on the ground that the policy was procured by fraud or misrepresentation. The first incontestability provision, form
 
 A,
 
 allows the perpetual contestability of the contract as to any fraudulent misstatements made in the application. Form A provides in part: “Time Limit on Certain Defenses: (a) After two years from the date of issue of this
 
 *883
 
 policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or disability (as defined in the policy) commencing after the expiration of such two-year period.”
 

 In lieu of form A, noncancellable policies may contain form B, which gives the insurer two years, not counting any period of disability, to discover and contest fraudulent or inaccurate representations in the application. Form B provides in part: “(a) After this policy has been in force for a period of two years during the lifetime of the insured (excluding any period during which the insured is disabled), it shall become incontestable as to the statements contained in the application.” The clause in parentheses may be omitted at the insurer’s option.
 
 [3]
 
 Hancock chose the full text of form B. In construing the incontestability clause, this court is mindful that the clause must be given a reasonable construction according to the Legislature’s apparent intention because its inclusion in the policy was the result of a specific statutory directive. (See
 
 Prudential-LMI Com. Insurance
 
 v.
 
 Superior Court
 
 (1990) 51 Cal.3d 674, 684 [274 Cal.Rptr. 387, 798 P.2d 1230];
 
 Interinsurance Exchange
 
 v.
 
 Marquez
 
 (1981) 116 Cal.App.3d 652, 656-657 [172 Cal.Rptr. 263].)
 

 As discussed, the disability policy purchased by Greer defines “disability” in terms of the insured’s inability to work. “Total disability” is defined as occurring when the insured is prevented “from performing the material duties of your regular occupation.” It is undisputed that Greer’s back injury had not risen to this level during the two-year contestability period. Under these facts, the trial court found that the policy was incontestable because Greer had not become disabled within the meaning of the policy language within the two-year period.
 

 Hancock contends this ruling was in error because the legislative intent, as reflected in the statutory language, establishes that the term “disabled” in the incontestability clause
 
 includes all disabilities and is not limited to total disability.
 
 As Hancock argued below: “[T]he term ‘disabled,’ as used in Form B and adopted by John Hancock was not qualified or limited in any fashion by the Legislature.” Hancock points out that the term “disability” as used in other provisions of section 10350.2 includes the parenthetical “(as defined in the policy)” while the term “disability” as used in the tolling
 
 *884
 
 provision at issue is not so limited. From this definitional difference Hancock argues that “if the [Legislature wanted to define or limit the term ‘disabled’ in Form B, it would have done so.” Because of this, Hancock contends the tolling provision here encompasses all preexisting, undisclosed conditions which meet the “ordinary dictionary definition” of disability. It directs our attention to Webster’s Unabridged Dictionary (2d ed. 1983) at pages 517-518, which broadly defines “disabled” as “to make unable or unfit; to deprive of normal strength or power; as, a broken leg disables a man.” Thus, Hancock concludes that an issuer of a
 
 total disability
 
 policy which has been in existence for over two years can rescind the policy at any time thereafter on the ground that a disease or physical condition meeting the dictionary definition of “disability” was not disclosed in the policy application.
 

 The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law.
 
 (Brown
 
 v.
 
 Superior Court
 
 (1984) 37 Cal.3d 477, 484 [208 Cal.Rptr. 724, 691 P.2d 272].) “Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.]”
 
 (Lungren
 
 v.
 
 Deukmejian
 
 (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) We conclude the trial court’s interpretation of the tolling provision—that disability is measured by the policy definition and not the dictionary definition—is more reflective of the purpose of incontestability clauses.
 

 Our Supreme Court has endorsed the following language regarding the purpose of incontestability clauses: “ ‘ . . It is their purpose to put a checkmate upon litigation; to prevent, after the lapse of a certain period of time, an expensive resort to the courts—expensive both from the point of view of the litigants and that of the citizens of the state. In that way, it is a statute of limitations upon the right to maintain certain actions or certain defenses . . . .” [Citation.]’ ”
 
 (Amex Life Assurance Co.
 
 v.
 
 Superior Court, supra,
 
 14 Cal.4th at p. 1238.) This desire to provide reasonable protection against the indiscriminate contest of policies served as the impetus for the NAIC’s adoption of the model incontestability clause in 1950, enacted in California as section 10350.2. A committee report indicated: “ ‘The product which we sell is security and peace of mind, and the quality of our product is inferior unless it provides these values. There cannot be peace of mind where there is doubt as to the validity of the policy, and your committee urges the widest possible adoption of provisions which limit the insurer’s right to challenge the policy and the origin of disability.’ ” (Notes,
 
 supra,
 
 27 N.Y.U. L.Rev. at p. 671, fn. 3.)
 

 
 *885
 
 The argument advanced by Hancock has the potential to undermine the purpose and protection that section 10350.2 was intended to provide. Consider the circumstances where an insured contracts a serious, potentially disabling disease. Before the disease progresses to produce an actual disability as defined in the policy, the insurer discovers the insured had a longstanding partial hearing loss which was not disclosed in the policy application. Under Hancock’s interpretation, the insurer could seek recission of the policy, even after the contestable time has run, based on its claim that the insured was “disabled” and thus, the running of the two-year contestability period was tolled. The insured then faces costly and lengthy litigation with the insurance company at a time when the insured most needs peace of mind.
 

 In considering the consequences that might flow from Hancock’s construction of “disability,” we choose a construction that promotes rather than defeats the statute’s purpose and policy.
 
 (Ohio Farmers Ins. Co.
 
 v.
 
 Quin
 
 (1988) 198 Cal.App.3d 1338,1348 [244 Cal.Rptr. 359].) Any decision which would allow an insurer the open-ended right to declare a disability policy invalid on the ground that the insured’s undisclosed, preexisting condition meets the dictionary definition of disability defeats the manifest purpose and protection incontestability clauses are intended to provide. The only reasonable interpretation which will satisfy the statutory goal requires that the tolling of the two-year contestability period
 
 while the insured is disabled,
 
 applies only to a disability which is within the policy coverage.
 

 In reaching this decision, we are aided by court decisions in other jurisdictions construing analogous incontestability clauses in disability insurance policies. The court in
 
 Wischmeyer
 
 v.
 
 Paul Revere Life Ins. Co.
 
 (S.D.Ind. 1989) 725 F.Supp. 995, formulated the following interpretation of a contract provision identical to the one interpreted here, barring after two years any contest over policy application statements but tolling the running of the two-year contestability period for any period during which the insured was disabled. The court held: “[The statute] clearly reflects a legislative mandate that if an insured is not disabled for two years after issuance of the policy, then his claim for benefits cannot be denied on the grounds that he had a pre-existing condition. ... [^D By use of this precise language, the legislature struck a balance. The clause protects an insured
 
 who is healthy enough to work throughout the two-year period
 
 from losing the security of disability insurance because of some prior condition that might eventually disable him. On the other hand, the insurer is protected in that it is not precluded from denying benefits to an applicant whose pre-existing condition is so bad that he becomes disabled during the two-year period.”
 
 (Id.
 
 at pp. 1001-1002, italics added.) The court went on to say that, “[although the same provision could have been drafted with more clarity, this is the only possible construction of the particular clause in question.”
 
 (Id.
 
 at p. 1001.)
 

 
 *886
 
 The court in
 
 Velez-Gomez
 
 v.
 
 SMA Life Assur. Co., supra,
 
 8 F.3d 873, reviewed the identical policy language, and came to the same conclusion. In
 
 Velez-Gomez,
 
 the insured failed to disclose a preexisting condition of multiple sclerosis at the time he applied for disability insurance.
 
 (Id.
 
 at p. 874.) Gomez filed a claim for benefits over two and a half years from the date of the policy’s issuance claiming he was totally disabled.
 
 (Ibid.)
 
 The court interpreted the language of the tolling provision “excluding any period during which you are disabled,” as follows: The provision “straightforwardly tolls the running of the two-year period for the duration of any disability commencing within it. . . . [<JQ Related provisions within the four comers of the policy likewise counsel a common-sense reading of the plain language of the tolling provision. First, the term ‘disability’
 
 is defined in the policy
 
 as ‘injury or sickness [that] makes you unable to engage in your regular occupation.’ Thus, the date of disability is the relevant tolling event.”
 
 (Id.
 
 at pp. 875-876, italics added.)
 

 We find the analyses employed by
 
 Wischmeyer
 
 and
 
 Velez-Gomez
 
 to be consistent with our own view on the question before us. These courts appropriately interpreted the incontestability clause in a manner that furthers the intent of statutes employing language indistinguishable to that in section 10350.2, and properly rejected liberal elucidations which permit insurance companies to rely on preexisting conditions to rescind coverage. We also note that a scholarly analysis of the language used in the NAIC’s model incontestability clause tolling the mnning of the contestability period for the duration of the insured’s disability, defines the term “disability” as comporting with the insurance policy’s definition of “disability.” (Notes,
 
 supra,
 
 27 N.Y.U. L.Rev. at p. 681, fn. 43.)
 

 Hancock claims our interpretation of section 10350.2 will arguably reward insureds who make fraudulent misstatements on their policy applications. In expressly stating we do not condone such practices, we also must note that most state legislatures have expressed an awareness that incontestability clauses can be utilized to shield fraud in the procuring of insurance. However, in balancing this risk against the policies furthered by affording finality in disputes between insurers and insureds, lawmakers have mandated that insurers bear the potential losses incurred through occasional fraud in order to achieve a perceived greater good to society by strictly limiting disability insurance conflicts. Moreover, in the case before us, Hancock had a choice of inserting one of two statutorily required incontestability clauses in the policy purchased by Greer—one giving it the option of challenging issuance of the policy procured by fraud at any time, and another affording arguably lesser protection by extending the contestability period only in the event the concealed condition resulted in a disability for which the insured could
 
 *887
 
 obtain benefits. In choosing the second option, Hancock had fair warning that it could not use fraudulent misrepresentations to contest the validity of the contract after the contestability period had run. Thus, Hancock must remain obligated to Greer under the terms of the policy so issued to him.
 

 Disposition
 

 The judgment is affirmed. Costs to Greer. (Cal. Rules of Court, rule 26(b).)
 

 Kline, P. J., and Lambden, J., concurred.
 

 [1]
 

 All undesignated statutory references are to the Insurance Code.
 

 [2]
 

 We emphasize that the dispute before us involves whether the incontestability clause used in Greer’s policy bars Hancock from declaring the policy invalid on the basis of misrepresentation in the application after lapse of the two-year contestability period. Whether Hancock is precluded from denying benefits for a disability claim based on a condition which may have manifested prior to the issuance of the policy is a question not before us and therefore not addressed by this opinion.
 

 [3]
 

 Both form A and form B must be accompanied by the following language: “No claim for loss incurred or disability (as defined in the policy) commencing after two years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy.” This provision has no direct applicability here, as Greer never made a claim for benefits under the policy.