77 Cal.Rptr.2d 589 (1998)
Mark GALANTY, Plaintiff and Appellant,
v.
PAUL REVERE LIFE INSURANCE COMPANY, Defendant and Respondent.
No. B113007.
Court of Appeal, Second District, Division One.
August 17, 1998.
Review Granted November 4, 1998.
*590 Lambda Legal Defense and Education Fund, Inc., Jon W. Davidson, Hedges & Caldwell, Caldwell, Leslie, Newcombe & Pettit and Mary Newcombe, Los Angeles, for Plaintiff and Appellant.
*591 Barger & Wolen LLP, Gail E. Cohen and Larry M. Golub, San Francisco, for Defendant and Respondent.
MASTERSON, Associate Justice.
Mark Galanty appeals from a summary judgment in favor of respondent The Paul Revere Life Insurance Company. His appeal presents the following question of first impression: When a disability insurance policy limits its coverage to a "sickness" that "first manifests itself after the effective date of the policy, does the incontestability clause of the policy override the coverage limitation and require coverage for a sickness that was manifest before coverage commenced? We hold that the incontestability clause does not have that effect and accordingly affirm the judgment.

BACKGROUND
As the result of a test in June of 1987, appellant learned that he was HIV positive. Shortly thereafter he consulted Dr. Anthony Scarsella, a physician who was an AIDS/HIV specialist. Appellant consulted Dr. Scarsella to ascertain whether symptoms he suffered were caused by his HIV positive condition or by the flu. Almost two years later appellant applied to respondent for a policy of disability insurance. The application for insurance (after a series of medical history questions) asked appellant if in the past five years he "had any medical advice or operation, physical exam, treatment, illness, abnormality or injury not listed above." Appellant answered "yes." In the space provided, he said that he had had a benign cyst removed in 1985 or 1986 and that in July 1987 and February 1988 he had seen Dr. Scarsella for "flu." Appellant did not tell respondent that he previously tested positive for HIV. In the course of deciding whether to issue the policy, respondent obtained Dr. Scarsella's medical records on appellant. Nothing in these records indicated that appellant had tested positive for HIV or that Dr. Scarsella was an AIDS/HIV specialist.
Respondent then issued to appellant a preferred professional disability income policy with an effective date ("Date of Issue") of March 17, 1989. The policy covered the risk of "sickness," which it defined as a "sickness or disease which first manifests itself after the Date of Issue of the policy. The policy also contained an exclusion for preexisting conditions, viz., "We will not pay benefits for a Pre-Existing Condition if it was not disclosed on Your application. Pre-Existing Condition means a sickness or physical condition for which prior to the Date of Issue: [¶] a. Symptoms existed that would cause an ordinarily prudent person to seek diagnosis, care, or treatment; or [¶] b. Medical advice or treatment was recommended by or received from a Physician. [¶] Also We will not pay benefits for any loss We have excluded by name or specific description."
The policy also contained, as required by law (Ins.Code, § 10350.2), an incontestability clause: "a. After Your Policy has been in force for 2 years, excluding any time You are Disabled, We cannot contest the statements in the application. [¶] b. No claim for loss incurred or Disability that starts after 2 years from the Date of Issue will be reduced or denied because a sickness or physical condition not excluded by name or specific description before the date of loss had existed before the Date of Issue."
More than two years after the Date of Issue, appellant submitted a claim for disability benefits to respondent. He claimed that he was suffering from AIDS and related illnesses that prevented him from working. He said that he first saw his physician for this condition in July 1994 and became unable to work on August 24, 1994. Dr. Scarsella, the AIDS/HIV specialist who had seen appellant before he applied for the policy, filled out an attending physician's statement. Therein Dr. Scarsella stated his primary diagnosis as AIDS. Respondent began paying benefits under the policy on October 23, 1994.
In February 1995, respondent asked appellant to sign an authorization to obtain his medical records from UCLA. Appellant refused. In March 1995, respondent requested that appellant provide it with the date on which he tested positive for HIV and the facility at which he was tested. Appellant refused. Further correspondence over the *592 ensuing months was fruitless, since appellant failed to supply the requested information. Respondent then stopped paying the disability benefit. During the exchange of correspondence, one of appellant's attorneys told respondent that appellant's UCLA records could not be used to make any insurance determination pursuant to statute and that appellant had "tested positive for antibodies to HIV in July of 1987, long before he was solicited to buy the Policy."

CONTENTIONS
Appellant's principal contention is that the incontestability clause in the policy bars respondent from contesting his claim for benefits. Alternatively, he asserts that even if respondent were not so barred, summary judgment was not proper since there was a triable issue of material fact as to whether a positive HIV test constitutes a manifestation of sickness.
For its part, respondent contends that because appellant's sickness was manifest before the Date of Issue of the policy, it was not a covered risk and accordingly could not be used as a basis for seeking benefits under the policy.

DISCUSSION

1. Standard of Review
A summary judgment is properly granted if there is no question of fact and the issues raised by the pleadings may be decided as a matter of law. (Code Civ. Proc., § 437c, subd. (c); Mars v. Wedbush Morgan Securities, Inc. (1991) 231 Cal.App.3d 1608, 1613, 283 Cal.Rptr. 238.) In determining the propriety of a summary judgment, we are limited to those facts shown by the evidentiary materials submitted, as well as those admitted and uncontested in the pleadings. (Sacks v. FSR Brokerage, Inc. (1992) 7 Cal. App.4th 950, 962, 9 Cal.Rptr.2d 306; McDaniel v. Sunset Manor Co. (1990) 220 Cal. App.3d 1, 5, 269 Cal.Rptr. 196.)
In our review we exercise independent judgment in determining whether there are no triable issues of material fact and the moving party is thus entitled to judgment as a matter of law. (Union Bank v. Superior Court (1995) 31 Cal.App.4th 573, 579, 37 Cal. Rptr.2d 653; Torres v. Cool Carriers A.B. (1994) 26 Cal.App.4th 900, 904, 31 Cal. Rptr.2d 790.) We will uphold the judgment if it is correct on any ground, regardless of the reasons the trial court gave. (Biljac Associates v. First Interstate Bank (1990) 218 Cal.App.3d 1410, 1419, 267 Cal.Rptr. 819.)
In the absence of conflicting extrinsic evidence, interpretation of an insurance policy is a question of law which may be resolved by the court on summary judgment. (Code Civ. Proc., § 437c, subd. (c); Pacific Employers Ins. Co. v. Superior Court (1990) 221 Cal.App.3d 1348, 1354, 270 Cal.Rptr. 779; Pepper Industries, Inc. v. Home Ins. Co. (1977) 67 Cal.App.3d 1012, 1018, 134 Cal. Rptr. 904.) We make an independent determination as to the meaning of the policy. (Pacific Employers Ins. Co. v. Superior Court, supra, 221 Cal.App.3d at p. 1354, 270 Cal.Rptr. 779.)
In interpreting the language of the policy, the words used should be given their plain, ordinary meaning unless the policy clearly indicates the contrary. (St Paul Fire & Marine Ins. Co. v. Superior Court (1984) 161 Cal.App.3d 1199, 1202, 208 Cal. Rptr. 5.) Where the language is clear and unambiguous, we should not give it a strained interpretation in order to impose on an insurer a liability it has not assumed. (Ibid.; Pacific Employers Ins. Co. v. Superior Court, supra, 221 Cal.App.3d at p. 1354, 270 Cal.Rptr. 779.)

2. Coverage and Incontestability Clauses
The incontestability provision herein has two parts. Part a provides that after two years from Date of Issue, respondent may not rescind or invalidate the policy based on statements made or omitted by appellant in his application. This portion of the incontestability clause is not relevant to this case since respondent is not seeking to rescind or invalidate the policy based on any concealment by appellant of his HIV positive status.
*593 Part b of the incontestability clause, which is relevant to this case, provides that if, after two years from the Date of Issue of the policy, an insured files a claim for sickness or disability, respondent cannot deny the claim on the ground that the sickness or disability "existed" before the Date of Issue. Appellant asserts that part b of the incontestability clause bars respondent from rejecting his disability claim.[1] We disagree.
Numerous cases in other jurisdictions have considered the issue of a possible conflict between the "first manifest" language of a coverage provision and the incontestability clause. Indeed, we have been inundated by the parties with case citations, with each side claiming that its position is the "majority" (and so to be respected) and that the position of the opponent is the "minority" (hence to be scorned). We find this "case counting" to be of little value, but for purposes of illustration will discuss two cases from the different schools of thought that have emerged.
The view espoused by respondent is set forth in Massachusetts Casualty Insurance Co. v. Forman (5th Cir.1975) 516 F.2d 425. There the insured had been diagnosed with diabetes before he purchased a disability insurance policy. When he became disabled from his diabetes, he filed a claim for disability benefits. (Id. at p. 427.) As in the instant case, the policy provided coverage for disability resulting from sickness "first manifest" during its term and contained an incontestability clause. (Id. at pp. 427-428.) In ruling for the insurer, the court noted that "`[f]irst manifest' provisions shelter insurers from claims arising from conditions which exist, and which are known by the insured to exist, before coverage commences." (Id. at p. 428.) The court further noted that the incontestability clause "only prohibits denials of claims based on the prior existence of a disease." (Id. at p. 429, italics in original.) Based on the foregoing, the court concluded that since the insured's diabetes was first manifest before the date of issue and thus not within the policy coverage, the incontestability clause did not preclude the insurer from denying coverage for disability caused by diabetes. (Ibid.; accord, Neville v. American Republic Ins. Co. (5th Cir.1990) 912 F.2d 813.)
The view advanced by appellant is seen in Equitable Life Assur. Soc. of U.S. v. Bell (7th Cir.1994) 27 F.3d 1274. There the court styled the question as "whether, despite the statutorily required provision prohibiting a denial of coverage for pre-existing illnesses after [two] years, the insurer is free to exclude coverage for pre-manifesting illnesses." (Id. at p. 1280, italics in original!) The court found "[t]he incontestability clause muddles the picture considerably, however, with its broad reference to `pre-existing' diseases and conditions. `Pre-existing' could be read to include diseases and conditions that have manifested themselves as well as those that have notlogically, any disease or condition that manifests itself must, of course, `exist.'" (Ibid.) On this ground the court of appeals found that the incontestability clause barred the insurer from denying coverage.
Appellant's position is not hard to understand. Like the court of appeals in Equitable Life v. Bell, supra, he says that any sickness which was "manifest" before the Date of Issue necessarily "existed" before that date. So if the condition "existed," it is free from challenge by respondent due to the operation of part b of the incontestability clause. In short, the incontestability clause trumps the coverage clause.[2]
*594 There are at least two problems with appellant's position. The first is that it ignores existing California precedent which holds that an incontestability clause cannot be used to create coverage where there was none in the first instance. The second problem is that, for all intents and purposes, it ignores the coverage clause and reads it out of the policy.
With reference to California precedent, in Cohen v. Metropolitan Life Ins. Co. (1939) 32 Cal.App.2d 337, 346, 89 P.2d 732, the insured concealed from the insurer his hospitalization for tuberculosis that took place before the policy issued. The insurer had accepted the disability claim, made disability payments to the insured and waived the payment of future premiums. When the insurer discovered the concealment, it stopped making the disability payments and sought to rescind the premium waiver. The insured contended that the incontestability clause barred the insurer's claims. (Id. at pp. 341-343, 89 P.2d 732.) In rejecting the insured's arguments, the court held that in order for coverage to exist under the relevant policies, the insured was required to plead and prove that when he filed the disability claim, he "was suffering from `a disease occurring and originating after the issuance of the policies." (Id. at p. 346, 89 P.2d 732.) On these facts the court held that the incontestability clause "does not extend the coverage beyond the terms of the policy" and that the insured "failed to prove that his disability came within the coverage of said policies." (Id. at pp. 346, 347, 89 P.2d 732.)
To the same effect is New York Life Ins. Co. v. Hollender (1951) 38 Cal.2d 73, 237 P.2d 510. There, in allowing an insurer to reduce the face amount of a life insurance policy to conform to the true age of the insured, the Supreme Court quoted with approval the following language used by Chief Justice Cardozo in Metropolitan Life Ins. Co. v. Conway (1930) 252 N.Y. 449 [169 N.E. 642]: "[A]n incontestable clause `is not a mandate as to coverage, a definition of hazards to be borne by the insurer. It means only this, that within the limits of the coverage, the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken.'" (38 Cal.2d at p. 79, 237 P.2d 510, italics in original.)[3]
As to the second defect in appellant's position, unlike appellant we see neither confusion nor uncertainty in the definition of the risk to be covered as a sickness that "first manifests itself after the Date of Issue of the policy. "Manifest" is defined as that which is "[e]vident to the senses, especially to the sight, obvious to the understanding, evident to the mind, not obscure or hidden, and is synonymous with open, clear, visible, unmistakable, indubitable, indisputable, evident, and self-evident." (Black's Law Diet. (6th ed.1990) p. 962, col. 2.) On the other hand, to "exist" requires that a thing "be in present force, activity, or effect at a given time ... [t]o be or continue to be." (Id. at p. 574, col. 2.) As such, the definition of "exist" is far more inclusive than "manifest." What this means is simply that, although something that has manifested itself must exist, something that exists need not be manifest.
Appellant uses the more inclusive definition of "exist" to assert that, because the incontestability clause forbids the denial of a claim based on a sickness that existed before the Date of Issue, it necessarily also forbids the denial of a claim based on a sickness that had manifested itself before the Date of Issue. This assertion might make sense if we were to limit ourselves to the dictionary as our source of authority. However, we are required to look first to the language of the policy, giving effect to the intention of the parties at the time of contracting (Civ.Code, § 1636) and interpreting the whole of the agreement "so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Id., § 1641.) In so *595 doing, we seek to protect the expectations of the insured to the extent that they are objectively reasonable. (AIU Ins. Co. v. Superior Court (1990) 51 Cal.3d 807, 822, 274 Cal.Rptr. 820, 799 P.2d 1253.)
As has been stated in the context of a policy that required the insured to be in good health when the policy was delivered, "it would be unfair to hold a policy void where an insured had complied with every provision of the contract merely because lurking undetected within his anatomy was some pathology which would in the future prove [disabling]." (Metropolitan Life Ins. Co. v. Devore (1967) 66 Cal.2d 129, 138, 56 Cal.Rptr. 881, 424 P.2d 321 [discussing Brubaker v. Beneficial etc. Life Ins. Co. (1955) 130 Cal.App.2d 340, 278 P.2d 966].) The incontestability clause here addresses this unfairness and, after the expiration of a two-year period, bars the insurer from denying coverage because a sickness previously existed. (See Amex Life Assurance Co. v. Superior Court, supra, 14 Cal.4th at p. 1236, 60 Cal.Rptr.2d 898, 930 P.2d 1264 [incontestability clauses "are `required by statute in most states because without them, insurers were apt to deny benefits on the grounds of a pre-existing condition years after a policy had been issued'"].) To hold that an incontestability clause cannot create coverage where none existed in the first place appropriately responds to reasonable expectations. An applicant who is unaware of a potentially disabling condition will be assured that after two years have passed he cannot be questioned about whether he was in fact aware of the condition at the time of the application. On the other hand, an applicant with a manifest "sickness" will know that the sickness will never be covered. Both law and logic compel this result.[4]
Appellant says that acceptance of respondent's position would make the incontestability clause a nullity. Not so. As noted by the court of appeals in Equitable Life Assur. Soc. of U.S. v. Bell, supra, 27 F.3d at page 1283, "Many disabilities spring from causes that may exist for years without symptoms detectable by an ordinary person." (See also Metropolitan Life Ins. Co. v. Devore, supra, 66 Cal.2d at p. 140, 56 Cal.Rptr. 881, 424 P.2d 321 [referring to "where the latent condition becomes manifest"].) There is plainly a distinction between a disease or sickness that is manifest and that which may exist unbeknownst to the insured. It is the latter which is covered by the incontestability clause. The former, involving a sickness that is manifest before the effective date of the policy, is simply not a covered risk.
To sum up, appellant tries to demonize respondent for limiting its coverage to an illness that "first manifests" itself after the Date of Issue. He suggests that this is only a ploy to evade the incontestability clause. We do not see it that way. We know of no law or public policy which says that an insurer or any other contracting party cannot limit its part of a bargain to terms and conditions acceptable to it. Indeed, the law is that an insurer has the right "'"to limit the policy coverage in plain and understandable language, and is at liberty to limit the character and extent of the risk it undertakes to assume [citations]."'" (Merrill & Seeley, Inc. v. Admiral Ins. Co. (1990) 225 Cal. App.3d 624, 630, 275 Cal.Rptr. 280; accord, VTN Consolidated, Inc. v. Northbrook Ins. Co. (1979) 92 Cal.App.3d 888, 892, 155 Cal. Rptr. 172.)

3. Other Issues
We may dispose of appellant's other arguments in summary fashion. Appellant references Health and Safety Code section 199.21, subdivision (f), and California Department of Insurance Bulletin No. 86-3 (Oct. 10, 1986), which barred insurers from requesting blood tests from prospective insureds. Whatever *596 relevance this material may have had was mooted by the 1996 passage of Insurance Code section 799.02, which allows an insurer to decline a disability or life policy on the basis of two HIV tests. Obviously these tests were not requested of appellant by respondent. In any event, this material has nothing to do with the coverage question before us.
Appellant also asserts that if respondent wanted to protect itself from any alleged misstatements or omissions by him on his application, it could have used an alternate form of an incontestability clause permitted by Insurance Code section 10350.2. The choice of that alternate form would have allowed respondent to rescind at any time on discovery of fraud. (See United Fidelity Life Ins. Co. v. Emert, supra, 49 Cal.App.4th at p. 946, 57 Cal.Rptr.2d 14.) In the context of this case, the assertion begs the question. What is important is what was agreed to by the parties in their contract, not what they could have agreed to. Here the parties agreed to the language described above, and each must bear the consequences of that choice.
Finally, appellant asserts that even if there were a meaningful distinction between preexisting and manifest conditions, summary judgment was not properly granted in that there is a triable issue of material fact as to whether a positive HIV antibody test constitutes a manifestation of sickness. The trial court granted summary judgment on the ground that "the incontestability statutory provision does not preclude a disability insurance carrier from denying coverage in cases where a disease has manifested itself (as well as `existed') before the policy's issuance," and appellant's illness had manifested itself. The trial court was correct. As stated in the recent Supreme Court decision of Bragdon v. Abbott (1998) ___ U.S.___, 118 S.Ct. 2196, 141 L.Ed.2d 540, "The disease follows a predictable and, as of today, an unalterable course." [___ U.S. at p. ___, 118 S.Ct. at p. 2199.] "HIV infection satisfies the statutory and regulatory definition of a physical impairment during every stage of the disease." [___ U.S. at p. ___, 118 S.Ct. at p. 2204.] Would that this were otherwise, but it is not. It is evident from the Supreme Court's review of current medical data that a positive HIV test is a manifestation of sickness by any reasonable definition of that term. (See also Mogil v. California Physicians Corp. (1990) 218 Cal.App.3d 1030, 1040, 267 Cal.Rptr. 487.)

DISPOSITION
The judgment is affirmed. Respondent is to recover its costs on appeal.
SPENCER, P.J., and DUNN, J.[*], concur.
NOTES
[1] As noted, the policy also contains a provision that respondent "will not pay benefits for a Pre-Existing Condition if it was not disclosed on Your application...." This provision is a counterpart of the coverage afforded for a condition that first manifests itself after the Date of Issue, and therefore does not have separate significance in construing the language of the policy.
[2] Appellant also relies heavily on cases such as Amex Life Assurance Co. v. Superior Court (1997) 14 Cal.4th 1231, 1233, 60 Cal.Rptr.2d 898, 930 P.2d 1264; United Fidelity Life Ins. Co. v. Emert (1996) 49 Cal.App.4th 941, 945, 57 Cal.Rptr.2d 14; and John Hancock Mutual Life Ins. Co. v. Greer (1998) 60 Cal.App.4th 877, 881, 71 Cal. Rptr.2d 48. This reliance is misplaced inasmuch as these cases do not discuss coverage provisions of the policies, but are limited to interpretation of incontestability clauses. Indeed, as the court in John Hancock stated: "Whether Hancock is precluded from denying benefits for a disability claim based on a condition which may have manifested prior to the issuance of the policy is a question not before us and therefore not addressed by this opinion." (60 Cal.App.4th at p. 881, fn. 2, 71 Cal.Rptr.2d 48.)
[3] Appellant correctly points out that the incontestability clauses in the cited cases had somewhat different wording and were not imposed by statutory mandate. This is a distinction without a difference. The relevance of these cases is not why the incontestability clauses were in the policies, but rather their failure to have any effect on the coverage afforded by the policies.
[4] Since the language of the incontestability clause is that of the Legislature, not respondent, there would be no need to construe it against respondent even if there were an ambiguity. "Although it is generally true that an ambiguity in an insurance policy is construed against the insurer who causes the ambiguity, where the language is that of the Legislature, this principle does not apply. [Citation.] In such situations, `the statute [and, hence, the insurance policy provision in conformity therewith] must be construed to implement the intent of the Legislature and should not be construed strictly against the insurer....' [Citation.]" (State Farm Mut. Auto. Ins. Co. v. Messinger (1991) 232 Cal.App.3d 508, 519, 283 Cal.Rptr. 493.)
[*] Judge of the Municipal Court for the Long Beach Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.