[No. B004413. Second Dist., Div. Seven. Jan. 14, 1986.]

PACIFIC INDEMNITY COMPANY, Plaintiff,
Cross-defendant and Respondent, v.
IMPERIAL CASUALTY AND INDEMNITY COMPANY et al.,
Defendants, Cross-complainants and Appellants.

COUNSEL

Haight, Dickson, Brown & Bonesteel, Roy G. Weatherup, Robert M. Dato, Bolton, Dunn & Moore, Donald H. Moore, Wise & Nelson, Wise, Wiezorek, Timmons & Wise, George E. Wise and Michael J. Pearce for Defendants, Cross-complainants and Appellants.

Hufstedler, Miller, Carlson & Beardsley and John Sobieski for Plaintiff, Cross-defendant and Respondent.

OPINION

**AISENSON, J.**\*—This is an appeal from the judgment of the trial court. Judgment affirmed.

In this dispute involving three insurance companies, the trial court ruled that both defendants/appellants, under their policies of professional liability insurance in force at the time that the claim was made, were responsible for indemnifying and defending the insureds. The court, further, required defendants/appellants to reimburse plaintiff/respondent its contributive share of costs for defending and indemnifying the insureds where said plaintiff/respondent was the insureds' carrier at the time the acts complained of occurred.

The controversy is framed by three aspects of the contesting insurance policies which raise the questions: (I) whether appellants' and respondent's policies constitute similar insurance; (II) whether the entities or persons insured are the same; and (III) whether there is an overlap of coverage.

The material facts herein were submitted to the trial court by stipulation and are not in dispute. John K. Dees (Dees), formerly a partner in the accounting firm of Grant, Dotson, Kellogg & Dees (GDK & D), on or about May 24, 1972, certified the consolidated financial statement of Sun Fruit, Ltd., as of February 29, 1972. This statement was reviewed by Gerald Dane Dotson (Dotson), another former partner of the aforesaid firm. These acts constitute the basis of the subsequent claim and other actions. When these acts occurred, respondent Pacific Indemnity Company (Pacific) insured both the individuals and the partnership against professional malpractice.

On July 5, 1977, R. N. Gould (Gould) the receiver for Sun Fruit, Ltd., and others filed a complaint in the United States District Court in San Diego

---

\*Assigned by the Chairperson of the Judicial Council.

based upon the aforementioned activities naming Dees, Dotson, Clifford O. Grant, Jr. (Grant), Albert J. Kellogg (Kellogg) and the partnership among others as defendants. Subsequently, on March 15, 1978, Dees pleaded guilty to a violation of 18 United States Code section 371 arising out of the same transactions.

Between the time of the occurrence of the acts and the subsequent claim based on the said acts, on May 30, 1973, the partnership of GDK & D was dissolved. The next day Grant and Dotson formed the firm of Grant, Dotson and Co. (GD & Co.), a partnership. Kellogg & Dees formed the firm of Kellogg & Dees. When James J. Hendrich, Jr. (Hendrich) joined the firm the name was changed to Kellogg, Dees & Hendrich (KD & H), a partnership. At the time the Gould action was filed, Grant and Dotson as individuals and GD & Co. were insured for professional liability by appellant Imperial Casualty and Indemnity Company (Imperial). Kellogg, Dees and Hendrich as individuals and KD & H were insured for professional liability by appellant California Union Insurance Company (California).

Pacific agreed to defend GDK & D, Imperial agreed to defend Dotson, and California agreed to defend Dees, all subject to a reservation of rights.

On July 30, 1981, the Gould action was settled. Pacific contributed $210,000 toward settlement and incurred $179,664 in costs. Imperial contributed $283,000 toward settlement and incurred $240,585 in costs. California contributed $283,000 toward settlement and incurred $214,238 in costs. The three companies stipulated that their rights to recover settlement costs and expenses from each other were not prejudiced as a consequence of the Gould settlement.

On April 20, 1978, Pacific commenced the within action for declaratory relief.

I

*Whether appellants' and respondent's policies constitute similar insurance?*

The provisions regarding the risk undertaken in the respective litigants' policies read, in pertinent part, as follows:

The Pacific policy provides: "The company shall pay on behalf of the insured all sums which the insured shall be legally obligated to pay as damages because of any act or omission of the insured or any other person or

organization for whose acts or omissions the insured is legally responsible and arising out of professional services for others."

The Imperial policy provides: ". . . to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as 'damages' as the result of claims first made against the insured by reason of liability arising out of the performance of professional services for others in the insured's capacity as an accountant . . . and caused by any act, error or omission of the insured or any other person, entity or organization . . . for whose acts, errors or omissions the insured is legally liable."

The California policy provides: ". . . to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages by reason of any act, error or omission in professional services rendered or which should have been rendered by any insured (or by any other person for whose acts or omissions the named insured is legally liable) arising out of the conduct of the named insured's profession as an ACCOUNTANT . . . ."

The appellants contend that their insurance is not similar to respondent's because they each issued a "claims made" policy and respondent issued an "occurrence" policy.[1]

As can be seen from the language of the "coverage clauses" listed above, all three policies cover the same risk. The contract structure regarding when and how claims can be made does not change the character of the risk covered; hence the policies are similar insurance. ■ " 'The word "similar" is defined as " 'Nearly corresponding; resembling in many respects; somewhat like; having a general likeness,' " and as " 'having characteristics in common; very much alike; comparable; . . . alike in substance or structure; identical. . . .' " ' " (*Inter Insurance Exchange* v. *Alcivar* (1979) 95 Cal.App.3d 252, 259 [156 Cal.Rptr. 914]; *Plum* v. *City of Healdsburg* (1965) 237 Cal.App.2d 308, 317 [46 Cal.Rptr. 827]; *Darrah* v. *California State Automobile Assn.* (1968) 259 Cal.App.2d 243, 247 [66 Cal.Rptr. 374].)

■ The determination of whether the prior and subsequent policies constitute similar insurance is important on the question of which policy or policies were in force when the claim was made.

---

[1]"The two most common types of insurance policies offered for professional malpractice are the 'claims made' (or 'discovery') policy and the 'occurrence' policy. A 'claims made' policy is one whereby the carrier agrees to assume liability for any errors, including those made prior to the inception of the policy as long as a claim is made during the policy period. On the other hand, an 'occurrence' policy provides coverage for any acts or omissions that arise during the policy period even though the claim is made after the policy has expired." (*Chamberlin* v. *Smith* (1977) 72 Cal.App.3d 835, 845, fn. 5 [140 Cal.Rptr. 493].)

The Pacific policy provided under the heading "(d) Period of Coverage": "This coverage applies to claims arising wholly or in part out of services performed prior to termination of the policy, including but not limited to services performed prior to the inception of the policy whether reported during the policy period or subsequently *except with respect to unreported claims against the insured or any insured individual who has obtained similar insurance issued after the termination of this policy.*" (Italics added.)

▉ "In order to have uniformity in the interpretation of insurance contracts, this court, in determining whether a particular policy provides coverage, must consider the policy alone as if no other insurance is available." (*Chamberlin* v. *Smith, supra,* 72 Cal.App.3d at p. 844; *Hartford Accident & Indemn. Co.* v. *Civil Service Employees Ins. Co.* (1973) 33 Cal.App.3d 26, 31 [108 Cal.Rptr. 737].) ▉ In applying this rule to the policy language above, when appellants undertook the risk formerly assumed by respondent and issued their respective policies of *similar insurance* prior to the unreported claim being made, respondent's obligation to cover the unreported claim under its policy was extinguished. ". . . an insurance company has an unquestionable right to limit the coverage of the policy issued by it; and, when it has done so, the plain language of the limitation must be respected." (*Chamberlin* v. *Smith, supra,* 72 Cal.App.3d at p. 850; *Argonaut Ins. Co.* v. *Transport Indemn. Co.* (1972) 6 Cal.3d 496, 508 [99 Cal.Rptr. 617, 492 P.2d 673]; *Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 432 [296 P.2d 801, 57 A.L.R.2d 914]; *Pacific Indemn. Co.* v. *Truck Ins. Exch.* (1969) 269 Cal.App.2d 420, 428-429 [74 Cal.Rptr. 793].)

II

*Whether the entities and/or persons insured by appellants and respondent are the same?*

It is true that appellants never agreed to insure GDK & D. ▉ However, it is basic that "[a]ll partners are jointly and severally liable for everything chargeable to the partnership . . . ." (*Kadota Fig Assn.* v. *Case-Swayne Co.* (1946) 73 Cal.App.2d 796, 801 [167 P.2d 518]; Corp. Code, § 15015.) When California undertook to defend Dees and Imperial undertook to defend Dotson, they recognized their obligation under their respective policies. Dotson and/or Dees are jointly and severally liable for actions chargeable to GDK & D, their former partnership and jointly and severally liable for each others' acts during the time they were partners.

## III

*Whether there is an overlap of coverage of the three policies?*

 Imperial and California further contend that their respective policies provided that their "claims made" coverage did not apply to prior acts covered by another insurer's "occurrence" policy. If they did, they were only to be applied in excess of the settlement over Pacific's coverage, or at worst, all three companies should contribute.

Appellants contend that respondent's coverage being of the "occurrence" variety and theirs being of the "claims made" variety, the trial court should have imposed primary liability on respondent. In support of this position appellants cite *Chamberlin* v. *Smith, supra,* 72 Cal.App.3d 835, 850-851 and *Evanston Ins. Co.* v. *Affiliated FM Ins. Co.* (D.Conn. 1983) 556 F.Supp. 135, which factually appear to support this premise in that the "occurrence" carrier was held primarily liable. In order to apply these rulings to the instant case, it is necessary to overlook an important factual distinction. In the cited cases, the competing policies were coexistent and provided coverage at the same time. Here, Pacific's obligation was extinguished by the acquisition of "similar insurance" by its former insureds pursuant to the plain language of their insurance contract. "It is . . . axiomatic that an insurance policy is but a contract; that like all other contracts it, too, must be construed from the language used and that where . . . its terms are plain and unambiguous, the courts have a duty to enforce the contract as agreed upon by the parties." (*VTN Consolidated, Inc.* v. *Northbrook Ins. Co.* (1979) 92 Cal.App.3d 888, 892 [155 Cal.Rptr. 172]; *State Farm Mut. Auto. Ins. Co.* v. *Herron* (1977) 71 Cal.App.3d 673, 677 [139 Cal.Rptr. 575]; *Farmers Ins. Exch.* v. *Harmon* (1974) 42 Cal.App.3d 805, 809 [117 Cal.Rptr. 117].)

The overlap of coverage that exists under the facts herein is between Imperial's and California's coexisting policies. They, therefore, must share in the indemnification and defense of the insureds.

Judgment affirmed.

Thompson, Acting P. J., and Johnson, J., concurred.

A petition for a rehearing was denied February 10, 1986, and appellants' petitions for review by the Supreme Court were denied April 16, 1986. Panelli, J., was of the opinion that the petition should be granted.