[No. B046562. Second Dist., Div. Two. July 2, 1990.]

PACIFIC EMPLOYERS INSURANCE COMPANY, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; ELIZABETH ANN RAUSCH, as Executrix, etc., Real Party in Interest.

**COUNSEL**

Bronson, Bronson & McKinnon and Ralph S. LaMontagne, Jr., for Petitioner.

No appearance for Respondent.

Morgan, Wenzel & McNicholas, Roland R. Tijerina and David T. McCann for Real Party in Interest.

**OPINION**

**COMPTON J.**—On April 17, 1981, Pacific Employers Insurance Company (PEIC) issued a "claims made" Professional Life Underwriters Insurance liability policy to Richard M. Rausch, an insurance salesman. Pursuant to the terms and limitations of the policy, liability coverage was to be

afforded in the amount of $5 million during the period March 15, 1981 through March 15, 1983.

The insuring agreement obligated PEIC to pay on behalf of the insured "all sums which the insured shall become legally obligated to pay as damages because" of any claim made against the insured and reported, in writing, to PEIC during the policy period.

On November 5, 1982, Richard Rausch died. Immediately thereafter, his widow, Elizabeth Ann Rausch (Rausch) retained Kenneth A. Krekorian of the law partnership of Newman, Aaronson, Krekorian & Vanaman (Krekorian) to represent her in the probate of her husband's estate.

Prior to December 31, 1982, Elizabeth Rausch tendered the PEIC insurance policy to Krekorian.

In early 1983, Rausch received notice of various creditors' claims which were being made against the estate. These claims eventually led to the August 1983 filing of certain creditors' suits against the estate.

Rausch tendered the majority of the creditors' claims to Krekorian prior to the expiration date of PEIC's insurance policy. Krekorian, however, failed to give notice of the creditors' claims to PEIC during the policy period.

Sometime after the policy had expired, Rausch requested Attorney Michael Morgan, who was representing her in an unrelated matter, to provide notice to PEIC of the various creditors' claims.

On February 15, 1984, Morgan gave notice to PEIC of the claims against the estate by means of written correspondence.

PEIC denied coverage on the ground that the claims, though made during the policy period, were not reported to PEIC during the policy period.

On October 22, 1985, Rausch filed suit against PEIC. On May 13, 1987, she filed an amended complaint naming Krekorian as an additional defendant. As against Krekorian, Rausch asserted a cause of action for malpractice, contending, inter alia, that Krekorian was negligent in failing to report the creditors' claims to PEIC before the policy expired in March 1983. As

against PEIC, Rausch set forth causes of action for breach of the insurance agreement, bad faith and related causes of action.

On August 10, 1989, PEIC filed a motion for summary judgment contending that it had no duty to either defend or indemnify the estate as a result of the creditors' claims because Rausch had not reported the claims during the policy period. The trial court denied the motion finding that PEIC "must prove actual prejudice resulting from receipt of notice of otherwise covered claims beyond the termination of the insurance policy issued" by PEIC to its named insured. Thereafter, PEIC petitioned for a peremptory writ of mandate which this court denied. Subsequently, our Supreme Court directed the issuance of an alternative writ.

Rausch's contentions are threefold. First, the policy language limiting coverage to claims both made and reported during the policy period is unclear and ambiguous. Second, even if the policy language is "unambiguous" in the sense of being precise, the "notice prejudice rule" is applicable and PEIC has failed to demonstrate the required prejudice. Third, the reporting requirement is void as against public policy.

■ The question of whether policy language is ambiguous is one of law. A reviewing court is required to make an independent determination, looking to the words of the policy and considering the language therein in accordance with its plain and ordinary sense. (*Cal-Farm Ins. Co.* v. *TAC Exterminators, Inc.* (1985) 172 Cal.App.3d 564 [218 Cal.Rptr. 407]; *Boogaert* v. *Occidental Life Ins. Co.* (1983) 150 Cal.App.3d 875 [198 Cal.Rptr. 357].)

■ Although ambiguities in a policy of insurance are to be construed in favor of the insured in those instances where the insured would reasonably expect coverage (*Bartlome·*v. *State Farm Fire & Casualty Co.* (1989) 208 Cal.App.3d 1235, 1239 [256 Cal.Rptr. 719]), some actual or apparent ambiguity must be present before the rule comes into play. (*Johnson* v. *Continental Ins. Companies* (1988) 202 Cal.App.3d 477, 481 [248 Cal.Rptr. 412]; *Hackethal* v. *National Casualty Co.* (1987) 189 Cal.App.3d 1102, 1109 [234 Cal.Rptr. 853].) Such ambiguity "cannot be based on a strained interpretation of the policy language." (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 912 [226 Cal.Rptr. 558, 718 P.2d 920].)

Section I, entitled "COVERAGE," provides that PEIC is required "[t]o pay on behalf of the Insured all sums which the Insured shall become

legally obligated to pay as damages because of any claim first made against the Insured and reported to the company during the policy period . . . ."

Rausch concedes that this language clearly and unambiguously limits coverage to claims both made and reported during the policy period. She contends, however, that section III contradicts this reporting requirement.[1]

■ Rausch contends that subparagraphs 1 and 2 of subdivision (b) of section III stand for the proposition that written notice need be given within the policy period only if the insured becomes aware of an act or omission which might subsequently result in a claim, but not if an actual claim is made.

A reasonable reading of section III refutes Rausch's position. Subparagraph (a) indicates that the term "claim" not only encompasses acts or omissions which the insured realizes might lead to a claim, but also actual demands made against the insured by a claimant. Neither the words themselves nor the arrangement of the language is likely to mislead those purchasing insurance. PEIC has met its burden of phrasing section I limiting coverage to those claims both made and reported during the policy period. There is nothing in section III which in any way serves to negate this clear and unambiguous reporting requirement.

---

[1] Section III, entitled "POLICY TERRITORY AND CLAIMS-MADE PROVISIONS," reads as follows: "This policy applies to acts or omissions or personal injury occurring anywhere in the world:

"(a) Provided that claim is first made against the Insured within the United States of America, its territories or possessions or Canada, during the policy period or extended reporting period, and

"(b) Provided that those acts or omissions or personal injury occur anytime prior to the end of the policy period, and that the claim is first made against the Insured during the policy or extended reporting period if:

"1. during the policy period or extended reporting period the Insured shall have knowledge or become aware of any act, omission or personal injury which could reasonably be expected to give rise to a claim under this policy and shall during the policy period or extended reporting period give written notice thereof to the Company or

"2. during the period or extended reporting period, a claim alleges damages which are payable under this policy.

"A claim shall be considered to be reported to the company when the Company, or its authorized agent, first receives written notice of the claim or of an event which could reasonably be expected to give rise to a claim.

"If a claim has been first made against the Insured and reported to the Company during a policy period, any claim which is subsequently reported and which arises from the same or related acts or omissions as form the basis of the claim first made against the insured shall be considered part of the claim which was first made against the insured and reported to the Company during the policy year."

■ Rausch next contends that language contained within section V of the policy must be interpreted to mean that she was authorized to report the creditors' claims to PEIC after the policy period so long as she reported them within a "reasonable" time.

Section V, entitled "NOTICE OF CLAIM OR SUIT," provides "[u]pon the Insured becoming aware of any act, omission or personal injury which could reasonably be expected to be the basis of a claim or suit covered hereby, written notice shall be given by or on behalf of the Insured to the Company or any of its authorized agents as soon as practicable, together with the fullest information obtainable . . . ."

Upon discovering that notice of the creditors' claims had not been given to PEIC by Krekorian, Rausch acted quickly to remedy the situation by authorizing a second attorney to give PEIC the required notice. In so doing, Rausch claims she acted "as soon as practicable" and thus complied with section V of the policy. A provision requiring notice "as soon as practicable" has generally been construed as "merely requiring notice which is prompt and reasonable under the circumstances." (*Gibson* v. *Colonial Ins. Co.* (1949) 92 Cal.App.2d 33, 36 [206 P.2d 387] disapproved on another point in *Campbell* v. *Allstate Ins. Co.* (1963) 60 Cal.2d 303, 307 [32 Cal.Rptr. 827, 384 P.2d 155].) "Practicable" is defined as "feasible" or "possible." (Webster's New Collegiate Dict. (9th ed. 1984) p. 923.) It was obviously "possible" or "feasible" for Rausch to have given PEIC notice of the claims at the same time she handed them over to Krekorian. More importantly, such notice would have been "reasonable under the circumstances." Section V, when considered with language contained in section I, must be interpreted to mean that an insured is required to report the claim within a reasonable time, but at all times within the policy period. Rausch's decision to entrust Krekorian with forwarding the claims to PEIC did not excuse her from insuring that notice was made in compliance with the terms of the policy.

■ The next issue is whether the lack of timely notice, about which there is no dispute, precludes PEIC's liability on the policy. In the area of professional liability insurance, the two most common types of insurance policies offered are the "occurrence" policy and the "claims made" policy. (*Pacific Indemnity Co.* v. *Imperial Casualty & Indemnity Co.* (1986) 176 Cal.App.3d 622, 626 [222 Cal.Rptr. 115].) "[A]n 'occurrence' policy provides coverage for any acts or omissions that arise during the policy period even though the claim is made after the policy has expired." A "claims made" policy, on the other hand, "is one whereby the carrier agrees to assume liability for any errors, including those made prior to the inception

of the policy as long as a claim is made during the policy period." (*Chamberlin* v. *Smith* (1977) 72 Cal.App.3d 835, 845, fn. 5 [140 Cal.Rptr. 493].) In this case we construe a policy in which coverage does not attach unless the claim is made *and* reported to the insurer during the policy period.

California's "notice-prejudice" rule operates to bar insurance companies from disavowing coverage on the basis of lack of timely notice unless the insurance company can show actual prejudice from the delay. The rule was developed in the context of "occurrence" policies. (See *Campbell* v. *Allstate Ins. Co., supra,* 60 Cal.2d at p. 306 (automobile liability policy); *Billington* v. *Interinsurance Exchange* (1969) 71 Cal.2d 728, 737 [79 Cal.Rptr. 326, 456 P.2d 982] (automobile liability policy); *Abrams* v. *American Fidelity & Cas. Co.* (1948) 32 Cal.2d 233, 237 [195 P.2d 797] (automobile liability policy); *Reed* v. *Pacific Indemnity Co.* (1950) 101 Cal.App.2d 151, 161 [225 P.2d 255] (automobile liability policy); *Gibson* v. *Colonial Ins. Co., supra,* 92 Cal.App.2d at pp. 35-36 (personal injury liability policy); *National Auto. & Cas. Ins. Co.* v. *Brown* (1961) 197 Cal.App.2d 605, 608 [17 Cal.Rptr. 347] (automobile liability policy); *Hanover Insurance Co.* v. *Carroll* (1966) 241 Cal.App.2d 558, 568 [50 Cal.Rptr. 704] (automobile liability policy); *Moe* v. *Transamerica Title Ins. Co.* (1971) 21 Cal.App.3d 289, 301 [98 Cal.Rptr. 547] (title insurance policy requiring insured to notify the insurance company in writing within 60 days after the loss or damage was determined).)

We recognize that the "notice prejudice" rule has been applied to a "claims made" professional errors and omissions policy. (See *Northwestern Title Security Co.* v. *Flack* (1970) 6 Cal.App.3d 134, 140-142 [85 Cal.Rptr. 693].) In applying the rule, however, the *Flack* court relied solely on *Campbell*, finding, without discussion, that the distinction between a "claims made" insurance policy and an "occurrence" policy did not require a departure from the ordinary application of the notice-prejudice rule. In our opinion, the distinction is critical.

Occurrence policies were developed to provide coverage for damage caused by collision, fire, war, and other identifiable events. (*Zuckerman* v. *Nat. Union Fire Ins.* (1985) 100 N.J. 304 [495 A.2d 395, 398-399].) Because the occurrence of these events was relatively easy to ascertain, the insurer was able to "conduct a prompt investigation of the incident and make an early assessment of related injuries and damages with the result that actuarial considerations permitted relative certainty in estimating loss ratios, establishing reserves, and fixing premium rates." (*Stine* v. *Continental Cas. Co.* (1984) 419 Mich. 89 [349 N.W.2d 127, 131].) The automobile liability policies in *Campbell, Abrams,* and *Billington* were classic occurrence poli-

cies where coverage attached once the "occurrence" took place even though the claim was not made for some time thereafter. Notice provisions contained in such occurrence policies were "included to aid the insurer in investigating, settling, and defending claims," not as a definition of coverage. (*Zuckerman* v. *Nat. Union Fire Ins.*, *supra*, 495 A.2d at p. 406.) ■ "[T]he requirement of notice in an occurrence policy is subsidiary to the event that invokes coverage, and the conditions related to giving notice should be liberally and practically construed." (*Ibid.*)[2]

All professional liability policies were at one time "occurrence" policies. (See Kroll, *The Professional Liability Policy "Claims Made"* (1978) 13 Forum 842.) Underwriters soon realized, however, that "occurrence" policies were unrealistic in the context of professional malpractice because the injury and the negligence that caused it were often not discoverable until years after the delictual act or omission. In an effort to reduce their exposure to an unpredictable and lengthy "tail" of lawsuits filed years after the occurrence they agreed to protect against, underwriters shifted to the "claims made" policy. (*Id.* at p. 845.) This type of policy differed materially from an "occurrence" policy in several aspects. Most notably, it was transmittal of notice of the claim to the insurer which was the event that invoked coverage.

■ The effect of applying the "notice prejudice rule" as developed in *Campbell* and its progeny to the facts of this case would be to convert PEIC's "claims made" policy into an "occurrence" policy. In the absence of actual prejudice from late reporting, which also defeats coverage under an "occurrence" policy, all negligence during the policy period would be covered.

We find persuasive the reasoning in *Gulf Ins. Co.* v. *Dolan, Fertig and Curtis* (Fla. 1983) 433 So.2d 512, 515 [37 A.L.R.4th 374].

"Claims-made policies . . . require that notification to the insurer be within a reasonable time. Critically, however, claims-made policies require that notice be given *during the policy period* itself. When an insured becomes aware of any event that could result in liability, then it must give notice to the insurer, and that notice must be given 'within a reasonable time' or 'as soon as practicable'—at all times, however, during the policy period . . . . [¶] Coverage depends on the claim being made and reported to the insurer during the policy period. Claims-made . . . policies are essentially *reporting* policies . . . . If a court were to allow an extension of reporting time after

---

[2] Rausch contends *Zuckerman* is distinguishable from the facts of this case because the "ambiguity" Rausch claims exists within PEIC's policy makes it clear that this is not a typical "claims made" policy. As we have noted, no ambiguity exists.

the end of the policy period, such is tantamount to an *extension of coverage* to the insured gratis, something for which the insurer has not bargained. This extension of coverage, by the court, so very different from a mere condition of the policy, in effect rewrites the contract between the two parties. This we cannot and will not do." (Italics in the original.) See also *Zuckerman* v. *National Union & Fire Ins. Co.*, *supra*, 495 A.2d 395; *Stine* v. *Continental Casualty Co.*, *supra*, 349 N.W.2d 127; *Safeco Title Ins. Co.* v. *Gannon* (1989) 54 Wn.App. 330 [774 P.2d 30].)

We believe the *Dolan* rationale particularly compelling on the facts of this case where the insured knew about the claims, handed them over to her attorney well within the policy period and the attorney, thereafter, failed to notify PEIC.

Here, the policy afforded coverage only for claims "first made against the Insured and reported to the company during the policy period . . . . " Although the result is coverage more restrictive than that provided by the basic types of professional liability insurance policies, "[a]n insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected." (*National Ins. Underwriters* v. *Carter* (1976) 17 Cal.3d 380, 386 [131 Cal.Rptr. 42, 551 P.2d 362].)

We next consider whether, as Rausch contends, the notice provision in PEIC's "claims made" insurance policy is violative of public policy. ▮ Although it is a well-established principle that an insurer has the right to limit policy coverage, it is also the rule that any limitation of coverage must conform to the law and public policy. (*Lumberman's Mut. Cas. Co.* v. *Wyman* (1976) 64 Cal.App.3d 252, 259 [134 Cal.Rptr. 318].) ▮ Any provision contained within an insurance contract which is violative of public policy is not enforceable. (*Ibid.*)

▮ The social utility of "claims made" policies has been well documented. Underwriters, secure in the fact that claims will not arise under the subject policy after its expiration or termination can underwrite a risk and compute premiums with greater certainty. An insurance company can establish its reserves without having to consider the possibilities of inflation beyond the policy period, upward-spiralling jury awards, or later changes in the definition and application of negligence. (See Kroll, *The Professional Liability Policy "Claims Made," supra*, 13 Forum 842.) There are benefits to the insured as well. Among other things, "claims made" policies aid in

making insurance more available and less expensive than "occurrence" policies.[3] (*Yancey* v. *Floyd West & Co.* (Tex.App. 1988) 755 S.W.2d 914, 924.)

■ Rausch does not question the general validity of "claims made" policies, but rather challenges the notice requirement, arguing that this limitation of coverage to claims filed *and* reported during the policy period defeats the reasonable expectations of the insured and, accordingly, violates public policy.

Rausch asserts that "[t]he reasonable expectation of a purchaser of a 'claims made' policy is that he will be covered for claims made against him during the policy period." As has been noted, the policy terms, including the reporting requirement, were clear and unambiguous. The policy also provided that "[i]n case of . . . non-renewal of this policy by the Company, the Insured shall have the option to have issued an endorsement providing a one year extended reporting period for acts, omissions or personal injury occurring prior to the end of the policy period and otherwise covered by the policy." Under these circumstances, we conclude that the named insured could not reasonably have expected that unreported claims would be covered by the terms of the policy.

■ Rausch also contends that an insurance agreement such as the one at issue in this case impermissibly restricts an insured's freedom to contract. Rausch offers this scenario. "If" a claim is made against an insured near the "very end" of the policy's term, the insured would have "little choice" but to renew his policy in order to make the required notification. PEIC, Rausch contends, holds its insureds "hostage" by the restrictions contained within its policies.

Rausch's position is meritless. Insureds are not held "hostage" by a "claims made and reported" provision. An insured has the option of either purchasing another "claims made" policy from the initial insurer to extend the period of coverage, or purchasing a policy with retroactive coverage with another insurer. An insured is not locked into a contractual relationship with the initial insurer because nothing interferes with the freedom to pursue either alternative. Additionally, many policies offer protection such as that afforded to the named insured in the instant case. Under the terms of the PEIC policy the insured, upon the policy's expiration, could have obtained insurance from another insurer and still protected himself against unknown claims by purchasing from PEIC an endorsement providing for an "extended reporting period."

---

[3] For example, the named insured in this case paid a $220 per year premium.

The provisions of the policy are plain and unambiguous. They clearly require as a condition of coverage that a claim on account of negligent acts, errors or omissions be made and reported during the policy period. Rausch has failed to demonstrate that the policy has any capacity to inhibit or discourage freedom of contract contrary to established notions of public policy, or that the particular provisions of the policy are manifestly unfair.

The alternative writ having served its purpose is discharged. Let a peremptory writ of mandate issue, directing respondent to vacate its order of October 27, 1989, denying PEIC's motion for summary judgment and to enter a new order granting the motion.

Roth, P. J., and Gates, J., concurred.