**SILICON VALLEY BANK, Plaintiff,**

v.

**NEW HAMPSHIRE INSURANCE CO., Aig Europe (UK) Limited, Defendants.**

Nos. 00CV6096(RSWL), 00CV13207(RSWL).

United States District Court, C.D. California.

April 30, 2002.

G. Andrew Lundberg, Jr., Karen R. Leviton, Ethan J. Brown, Kelly Lynn Woodson, Latham & Watkins, Los Angeles, CA, Carolyn B. Burton, Frederick P. Furth, Michael P. Lehmann, Furth Firm, San Francisco, CA, for Silicon Valley Bank.

Robert A. Meyer, Lisa L. Horlick, Loeb & Loeb, Los Angeles, CA, Stuart Cotton, M. Michael Goldstein, David Kenna, Daniel Markevich, Diana E. Goldberg Wayne R. Glaubinger, Mound Cotton Wollan & Greengrass, New York City, for New Hampshire Ins. Co., Ltd., AIG Europe (UK) Ltd.

Joseph M. Gabriel, Todd A. Boock, Liner Yankelevitz Sunshine & Regenstreif, Santa Monica, CA, for It Had to Be You Productions, Inc., Neil Kaplan.

Charles N. Shephard, Andrew T. Kugler, Greenberg Glusker Fields Claman, Machtinger & Kinsella, Los Angeles, CA, for Calling, LLC.

Paul H. Samuels, Paul H. Samuels law Offices, Los Angeles, CA, Harry S. Petchesky, Scheichet & Davis, New York City, for Arthur Kananack, Arthur Kananack & Assoc., Inc.

Martin D. Singer, Michael D. Holtz, Lavely & Singer, Los Angeles, CA, for Condor Communications, LLC, Condor Entertainment Corp., Ian Jessel.

## ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

LEW, District Judge.

Presently before the Court are the following Motions: (1) Defendants New Hampshire Insurance Company and AIG Europe (UK) Limited's Motion for Partial Summary Judgment Dismissing Plaintiff's Second Claim for Relief; (2) Plaintiff Silicon Valley Bank's Motion for Partial Summary Judgment Re: Defendants' Third Affirmative Defense; (3) Plaintiff Silicon Valley Bank's Request for Judicial Notice; and (4) Defendants New Hampshire Insurance Company and AIG Europe (UK) Limited's Request for Judicial Notice. These matters were scheduled to be heard on December 17, 2001, but were taken off calendar pursuant to Rule 78 of the Federal Rules of Civil Procedure for disposition based on the papers filed. For the reasons set forth below, the Court hereby **GRANTS** both Requests for Judicial Notice. The Court **DENIES** Defendants' Motion for Partial Summary Judgment on Plaintiff's Second Claim for Relief. The Court **GRANTS** Plaintiff's Motion for Partial Summary Judgment on Defendants' Third Affirmative Defense.

### I. BACKGROUND

This is an action for breach of contract regarding an insurance policy on a loan. Silicon Valley Bank ("Plaintiff" or "SVB") extended several multi-million dollar loans to motion picture production companies to produce two films, "It Had to Be You" and "The Calling." Plaintiff sought to insure these loans against the risk that these movies would fail to generate sufficient revenue to pay back the interest and principal due Plaintiff under the loans. To this end, Plaintiff purchased two insurance pol-

icies from New Hampshire Insurance Company ("New Hampshire"), AIG Europe (UK) Limited ("AIG Europe"), AXA Corporate Solutions (UK) Ltd. ("AXA–UK"), and Great Lakes Reinsurance ("Great Lakes"). The films subsequently failed to generate sufficient revenue, and Plaintiff sought payment from Defendants on the Policy. Defendants have not paid Plaintiff's claim.

Plaintiff filed suit on October 3, 2000. Plaintiff filed a First Amended Complaint on August 2, 2000.

On July 27, 2001, Defendants New Hampshire and AIG Europe filed an Amended Answer and Defendant New Hampshire filed a Counterclaim against SVB.

On November 26, 2001, Plaintiff moved to dismiss Defendant's counterclaim for breach of the implied covenant of good faith and fair dealing and to strike Defendants' eighth, ninth, and tenth affirmative defenses. The Court granted Plaintiff's motion as to the counterclaim and the eighth and ninth affirmative defenses. The Court denied Plaintiff's motion as to the tenth affirmative defense.

## II. DISCUSSION

### A. Legal Standard: Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue is one in which the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence, and any inferences based on underlying facts, must be viewed in a light most favorable to the opposing party. *Diaz v. Am. Tel. & Tel.*, 752 F.2d 1356, 1358 n. 1 (9th Cir. 1985). In ruling on a motion for summary judgment, the Court's function is not to weigh the evidence, but only to determine if a genuine issue of material fact exists. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

### B. Requests for Judicial Notice

█ Defendants New Hampshire and AIG Europe request that this Court take judicial notice of various pleadings filed in this Court with regard to Plaintiff's Motion for Partial Summary Judgment. Plaintiff SVB requests that this Court take judicial notice of various pleadings filed in this Court by Defendants in this and another similar matter, and by non-parties in cases relating to similar insurance policies.

The Court hereby **GRANTS** Defendants and Plaintiff's requests for judicial notice in their entirety since these pleadings are relevant to a determination of the matters presently before the Court.

### C. Motions for Partial Summary Judgment

In the first Motion before the Court, Defendants New Hampshire and AIG Europe move for partial summary judgment on Plaintiff's second claim for relief. In the second claim for relief, Plaintiff brings a cause of action for breach of the Contingent Loss of Revenue Policy (the "Policy") entered into between Plaintiff and Defendants for the film, "The Calling" (the "Film").

In the second Motion before this Court, Plaintiff SVB moves for partial summary judgment on Defendants' third affirmative defense. In the third affirmative defense, Defendants assert that the claim made against them on the Film should be dismissed for Plaintiff's failure to deliver the Film as required by the Policy.

The issue presented to this Court by both parties' Motions is whether Plaintiff is entitled to assert coverage under the

Policy for the film "The Calling" based upon variations in "delivery" of the Film.

### 1. The Policy

A court's initial focus in resolving a question of insurance coverage is always on the language of the insurance policy itself.

Here, the Policy between the parties contains a single Insuring Clause indemnifying Plaintiff SVB for loss resulting from the Film's failure to generate a stated amount of net revenue. Specifically, the Insuring Clause states:

> The Insurers will indemnify the Insured for the Ascertained Net Loss in relation to the Project, up to but not exceeding the Sum Insured, as a consequence of the failure of the Project to generate Net Receipts equal to or in excess of the Sum Insured, subject only to the "General Exclusions" set forth below.

(Kenna Decl. Ex. B at 008.)

The "General Exclusions" referenced in the Insuring Clause are narrow in scope, and are limited to the following: fraud, war/civil commotion, radioactive contamination, and financial failure of SVB. (*Id.* at 018–019.)

Further, the Policy expressly lists only one "Condition Precedent" to coverage, requiring Plaintiff to pay the Gross Premium to the Intermediary for the Policy to be effective or binding. (*Id.* at 011.)

Of particular importance to the instant Motions are two provisions included under the "General Conditions" section of the Policy.

The first significant clause included as a "General Condition" is the Completion Clause. It states that "[n]o claim may be made under this Policy if Delivery of the Project has not occurred." (*Id.* at 009.) The Policy then defines "Delivery of the Project" by incorporating by reference the definition of Delivery in the Inter–Party Agreement entered into by the parties.

(Kenna Decl. Ex. C (filed under seal)). The Inter–Party Agreement requires the receipt of certain video and sound elements, as well as laboratory certificates, in order for "delivery" to be satisfied. (*Id.*)

The next significant provision included in the "General Conditions" section is the Variations Clause. It states that

> the [Bank] will not without the prior written consent of the Intermediary consent to any modification of or amendment or supplement to the Loan Agreement or any document referred to therein to which the [Bank] is a party which (i) might increase the conditions to or delay the time of payment of or decrease the amount of Net Receipts, or (ii) which would or might diminish or impair the security enjoyed by the [Bank] . . ., or (iii) which would provide any additional rights to the Sales Agent or any distributor which would adversely affect repayment . . . .

(Kenna Decl. Ex. B at 014.)

### 2. Policy Interpretation

■ The interpretation of an insurance policy is a question of law. This Court must therefore interpret and consider the relevance of each of the Policy provisions in resolving the issue of coverage posed in the Motions at hand.

■ Although insurance contracts have special features, they nonetheless are contracts governed by the ordinary rules of contract interpretation. The overriding goal of contract interpretation is to give effect to the parties' mutual intentions as of the time of contracting. Cal. Civ.Code § 1636 (West 2001). Where contract language is clear and explicit and does not lead to an absurd result, a court ascertains this intent from the written provisions and goes no further. "The words of a contract are generally to be understood in their ordinary and popular sense unless the par-

ties use them in a technical sense or 'a special meaning is given to them by usage' . . . ." *Helfand v. Nat'l Union Fire Ins. Co.,* 10 Cal.App.4th 869, 13 Cal.Rptr.2d 295, 299 (1992) (quoting Cal. Civ.Code § 1644).

However, if the terms of a contractual promise are ambiguous or uncertain, a court must interpret the promise "in the sense in which the promisor believed, at the time of making it, that the promisee understood it." Cal. Civ.Code § 1649. "This rule, as applied to a promise of coverage in an insurance policy, protects . . . the objectively reasonable expectations of the insured." *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 1265, 10 Cal. Rptr.2d 538, 833 P.2d 545 (1992).

If use of this rule does not eliminate the uncertainty, only then will a court construe the applicable language against the insurer, or the drafter who created the uncertain language in the first place. Cal. Civ. Code § 1654.

■ A policy provision is ambiguous if it is capable of more than one reasonable construction. *Producers Dairy Delivery Co. v. Sentry Ins. Co.,* 41 Cal.3d 903, 226 Cal.Rptr. 558, 718 P.2d 920 (1986). However, a court will not strain the policy language to create an ambiguity. *Id.* Moreover, a court will not label a provision ambiguous simply upon isolating phrases and considering them in the abstract. Rather, a provision will be construed in relation to the whole of the instrument, with each clause giving meaning to the other. *Id.;* Cal. Civ.Code § 1641.

■ An insurance company does have the right to limit the coverage of a policy issued by it. When it has done so, the plain language of the limitation must be respected. *Pac. Employers Ins. Co. v. Superior Court,* 221 Cal.App.3d 1348, 270 Cal.Rptr. 779, 784–85 (1990). However, because ambiguities are construed against the insurance company, coverage clauses

are interpreted broadly in favor of coverage. *See McLaughlin v. Conn. Gen. Life Ins. Co.,* 565 F.Supp. 434, 441 (N.D.Cal. 1983) (applying California law).

## 2. The Completion Clause Does Not Bar Coverage

■ With these principles in mind, the Court first looks at the Completion Clause. Although the language in an insurance policy must be read in its "ordinary and popular sense," it must also be interpreted in context and with regard to its intended function and the structure of the policy as a whole. *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.,* 5 Cal.4th 854, 867, 21 Cal.Rptr.2d 691, 855 P.2d 1263 (1993). It is the function served by policy language, and not the location of the language in an insurance policy, that is determinative. *Aydin Corp. v. First State Ins. Co.,* 18 Cal.4th 1183, 1191, 77 Cal. Rptr.2d 537, 959 P.2d 1213 (1998).

Thus, the Completion Clause must be construed in the context of the entire Policy. While the Completion Clause is listed as one of many "General Conditions" of Policy coverage, this Court finds the function of the Clause to be ambiguous. This ambiguity arises from the structure of the Policy itself. First, there is already a section governing "Conditions Precedent" for coverage. The only condition precedent listed requires Plaintiff to pay a "Gross Premium" to the "Intermediary", terms defined in the Policy. Second, there is already a section governing "General Exclusions," which is very limited in its scope, *see supra* Part II.C.1. Third, although labeled as a "General Condition" in the Policy for the film "The Calling," a very similar provision was used by the Defendants and labeled as an exclusion in the "It Had To Be You" policy, also at issue in this case though not in the present Motions. This creates ambiguity as to the

intended usage of the provision by the parties.

 Because the Policy provision in question has no "plain and clear" meaning and is ambiguous in the context in which it appears, this Court must proceed to consider the Insured SVB's reasonable expectations of coverage. *See Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992). The Court finds that a reasonable reader of the Policy could expect that coverage would begin once the "Gross Premium" was paid to the "Intermediary," as required by the only express condition precedent in the Policy. Further, the Court finds that Plaintiff could have reasonably understood that the Completion Clause would otherwise operate as a forfeiture only in circumstances where a material failure of delivery occurred. SVB's arguments on this point are quite persuasive. The parties surely never contemplated that an immaterial change in a laboratory form by a third-party film lab, or the waiver of "delivery" items that were never needed, *see infra* Part II.C.3, would defeat $2.9 million in coverage for which a substantial premium was paid. Likewise, nothing in the Completion Clause or in the incorporated definition of "Delivery of the Project" would alert the average reader that the Clause could be the basis for denying coverage outright even where the parties to the underlying agreements all concurred that "delivery" had occurred, as illustrated by Plaintiff's evidence.

 Finally, the Court notes that despite the ambiguity of the structure of the Policy and regardless of the function of the Completion Clause, the provision still could not be enforced by Defendants to deny coverage. Whether the Clause is interpreted as a limitation on coverage or as an exclusion, it must be "conspicuous, plain and clear." *See Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 271, 54 Cal.Rptr. 104,

419 P.2d 168 (1966) (quoting *Steven v. Fid. & Cas. Co. of New York*, 58 Cal.2d 862, 878, 27 Cal.Rptr. 172, 377 P.2d 284 (1962)); *McLaughlin v. Conn. Gen. Life Ins. Co.*, 565 F.Supp. 434, 441 (N.D.Cal.1983) (applying California law and noting that notice of non-coverage in a situation where coverage may be reasonably expected must be conspicuous, plain, and clear). Even unambiguous language may be insufficient to defeat coverage where these additional requirements are not met. *See Steven*, 58 Cal.2d at 878, 27 Cal.Rptr. 172, 377 P.2d 284. This rule also applies regardless of the reasonable expectations of the insured. *See 20th Century Ins. Co. v. Liberty Mut. Ins. Co.*, 965 F.2d 747, 753–54 (9th Cir.1992) (applying California law). This Court finds that the Completion Clause is not conspicuous, plain, or clear based on the following: (1) the location of the Clause in the Policy; (2) its incorporation of the definition of "Delivery of the Project" from an entirely separate agreement; and (3) the language used, which to a reasonable layperson would not clearly connote forfeiture in the event of *any* variation in "delivery."

### 3. The Variations Clause Permits Immaterial Variations In Delivery

Although the above interpretation of the Completion Clause is sufficient to dispose of the Motions at hand, the Court will go on to consider the Variations Clause at issue in the Policy.

As noted above, the provisions of the Policy, like the provisions of any other contract, must be construed in the context of the Policy as a whole. Therefore, the Policy must be read in light of the Variations Clause. Because the Court does not find the language of the provision to be absolutely clear and unambiguous, the Court will view the Clause in light of the

objectively reasonable expectations of the Insured.

■ The Variations Clause provides: the [Bank] will not without the prior written consent of the Intermediary consent to any modification of or amendment or supplement to the Loan Agreement or any document referred to therein to which the [Bank] is a party which (i) might increase the conditions to or delay the time of payment of or decrease the amount of Net Receipts, or (ii) which would or might diminish or impair the security enjoyed by the [Bank] ..., or (iii) which would provide any additional rights to the Sales Agent or any distributor which would adversely affect repayment ...

(Kenna Decl. Ex. B at 014.) A reasonable reading of the Clause is that Plaintiff SVB was required to obtain consent only for *material* variations to the Loan Agreement, or for variations that *actually prejudiced* the Insurers' interests as specified in sections (i), (ii), and (iii) of the Clause. The Court finds that a reasonable interpretation of the Variations Clause is that minor, immaterial departures in technical production or marketing details, that had no impact on the repayment of the insured loan, "would not affect the Insurers" coverage obligations.

The undisputed evidence presented by Plaintiff SVB is that the variations to delivery were immaterial. The Court finds that Defendants have not presented sufficient evidence to create a genuine issue of material fact on the materiality of the variations.

■ Furthermore, even if Defendants had presented sufficient evidence to raise a triable issue of fact on the materiality of the variations, Defendants have not shown that they suffered actual, substantial prejudice from the variations in delivery. Under California law, it is settled that an insurer, in order to avoid liability on the basis of a breach of a procedural condition such as a notice or cooperation clause, must establish actual and substantial prejudice. *See Ins. Co. of the State of Pa. v. Associated Int'l Ins. Co.,* 922 F.2d 516, 523 (9th Cir.1990) (applying California law); *Clemmer v. Hartford Ins. Co.,* 22 Cal.3d 865, 882, 151 Cal.Rptr. 285, 587 P.2d 1098 (1978). The prejudice requirement has been extended to apply to other procedural conditions, such as "consent-to-payment" conditions, which can be analogized to the Variations Clause in the instant matter. *See Faust v. Travelers,* 55 F.3d 471 (9th Cir.1995); *Jamestown Builders Inc. v. Gen. Star Indem. Co.,* 77 Cal.App.4th 341, 91 Cal.Rptr.2d 514 (1999). The overriding purpose of the actual prejudice requirement is to prevent the complete forfeiture of coverage based upon an insured's harmless breach of a policy condition.

■ Actual and substantial prejudice is "not shown simply by displaying end results." *Clemmer,* 22 Cal.3d at 883 n. 12, 151 Cal.Rptr. 285, 587 P.2d 1098. Rather, "the probability that such results could or would have been avoided absent the claimed default or error must also be explored." *Id.* The burden of showing that a breach of the clause resulted in prejudice is on the insurer. *See id.* at 882, 151 Cal.Rptr. 285, 587 P.2d 1098. The Court finds that Defendants have raised no triable issue as to any actual prejudice from the variations in delivery.

## IV. CONCLUSION

The Court finds that Plaintiff SVB is entitled to judgment as a matter of law on Defendants New Hampshire and AIG Europe's third affirmative defense. The Court finds that for the reasons discussed above and based on the undisputed facts in this case, no fair-minded jury could return a verdict for the Defendants on their "delivery" defense. Specifically, the Court

finds as a matter of law that Defendant Insurers are not excused from coverage under the Policy on the ground that the Film was not "delivered" in accordance with the Policy. Defendants' Motion for partial summary judgment is therefore **DENIED,** while Plaintiff's Motion for partial summary judgment is **GRANTED.** The Court adopts Plaintiff's Statement of Uncontroverted Facts filed in support of its Motion with modification.

**IT IS SO ORDERED.**