Filed 2/27/14  Yu v. Century Surety CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BANN-SHIANG LIZA YU,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>CENTURY SURETY COMPANY,<br><br>    Defendant and Respondent. | G048427<br><br>(Super. Ct. No. 30-2009-00255065)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Kim Garlin Dunning, Judge.  Affirmed.

Mohammed K. Ghods, William A. Stahr and Ruben Escobedo III for Palintiff and Appellant.

Woolls & Peer, John E. Peer and H. Douglas Galt for Defendant and Respondent.

\*          \*          \*

Plaintiff Bann-Shiang Liza Yu appeals from the summary judgment entered in favor of defendant Century Surety Company (Century) in an insurance bad faith action. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Yu is the owner/developer of the Candlewood Suites Hotel (the hotel) in Anaheim. Yu retained ATMI Design Build (ATMI) as the general contractor for the construction of the hotel. In February 2003, ATMI entered into a subcontract with Century's insured, H2O Technologies (H2O), to build the hotel's spa pool for $27,417. H2O completed its work on the spa pool in March 2004. At that time, H2O was covered by a general commercial liability policy (the policy) issued by Century. The policy was effective from June 6, 2003 to June 6, 2004. Essentially, the policy provided that it covered bodily injury and property damage occurring during the policy period, for which a claim is made during the policy period and *reported* to Century during the policy period or within the applicable "Extended Reporting Period." (The "reporting" requirement, at the heart of this appeal, is set forth in Section I 1.b.(4) of the policy.) Because H2O did not renew the Century policy, a 60-day extended reporting period applied, allowing claims to be reported through August 6, 2004.

In October 2004, Yu sued ATMI and approximately 35 subcontractors for construction defects (the construction action). The complaint did not name H2O and did not mention any defect with respect to the spa pool.

In July 2006, H2O was named as a defendant in a cross-complaint filed in the construction action. On April 18, 2007, H2O gave notice of the claim to Century and tendered its defense.

Century denied H2O's claim, stating there was no coverage under the policy because, "[a]lthough [H2O's] work was completed within the policy [period], [H2O] was NOT notified of the claim within the policy period; also, Century was NOT notified within the 60-day Extended Reporting Period."

2

Yu settled the construction action with ATMI, and that settlement included an assignment to Yu of ATMI's claims against the cross-defendants, including H2O.

Yu then settled ATMI's claims against H2O. H2O did not pay Yu any money, but rather agreed to provide the hotel with new pool equipment (e.g., heater, filter pump), and to execute a stipulated judgment in the amount of $2.5 million in favor of Yu, subject to Yu's agreement not to record that stipulated judgment or to enforce it against H2O's assets other than its insurance policies. H2O also assigned to Yu all of H2O's insurance claims against Century.

In March 2009, Yu, as assignee, sued 19 insurance companies for insurance bad faith related to claims arising from construction of the hotel. In August 2009, Yu filed the operative first amended complaint, which added Century as a defendant, based on the policy issued to H2O.

Century moved for summary judgment on the ground it had no duty to defend or indemnify H2O in the underlying action because the policy provided "claim-made and reported" coverage and "the claim against H2O was not both first made and reported to Century during the policy period."

The court granted summary judgment in favor of Century. In a lengthy written decision, the trial court explained its reasons. Essentially, the trial court agreed "[t]he H2O insurance policy is of the 'claims-made and reported' variety" and, because the claim in issue was *made* and *reported* "years after the policy expired," coverage was never triggered. Ultimately, the trial court concluded: "Without coverage, there was no breach of a duty to defend or indemnify and no breach of the covenant of good faith and fair dealing."

## DISCUSSION

Yu contends the trial court erred in granting summary judgment in favor of Century. She argues four grounds for reversal, none of which has merit.

3

*1. The General Principles and Standard of Review*

"As a question of law, the interpretation of an insurance policy is reviewed de novo under well-settled rules of contract interpretation. [Citation.] 'The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the "mutual intention" of the parties. "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id*., § 1639.)"'" (*E.M.M.I Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465, 470 (*E.M.M.I.*).)

"The question of whether policy language is ambiguous is one of law. A reviewing court is required to make an independent determination, looking to the words of the policy and considering the language therein in accordance with its plain and ordinary sense. [Citations.]" (*Pacific Employers Ins. Co. v. Superior Court* (1990) 221 Cal.App.3d 1348, 1354 (*Pacific Employers*).) "[L]anguage in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract. Courts will not strain to create an ambiguity where none exists." (*Waller v. Truck Ins. Exch.* (1995) 11 Cal.4th 1, 18-19.)

*2. The Policy Covers Only Claims Timely "Made and Reported"*

Yu first argues the trial court misinterpreted the policy as a "claims-made and reported" policy that required H2O "to satisfy a 'claim' reporting provision at Section [I 1.b.(4)] to trigger coverage." As we will discuss, Yu employs rules of both grammar and contract interpretation in support of her argument. These rules, however, do not surmount a much more fundamental problem: The interpretation of the policy she advocates is just not reasonable. Reading the policy as a whole, giving effect to all its parts and common sense meaning to its words, as we must, the correctness of the trial court's interpretation is obvious.

4

The policy contains a heading that advises in large font, bolded, capital letters that the policy provides "**CLAIM MADE AND REPORTED COVERAGE**." The heading states: "**SWIMMING POOL CONTRACTORS**" "**COMMERCIAL GENERAL LIABLIITY COVERAGE FORM**" "**COVERAGES A. AND B. PROVIDE CLAIMS-MADE AND REPORTED COVERAGE**" "**PLEASE READ THE ENTIRE FORM CAREFULLY**."

Below the heading, Section I of the policy states, in pertinent part, the following: "1. Insuring Agreement. [¶] a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. . . .[¶] . . . [¶] b. This insurance applies to 'bodily injury' and 'property damage' only if: [¶] (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; [¶] (2) The 'bodily injury' or 'property damage' did not occur before the Retroactive Date or after the end of the policy period; [¶] (3) You or any insured shown in 1.a., 1.b., 1.e. or 1.d. of Section II — Who is An Insured, did not have knowledge of any 'occurrence' which occurred prior to the effective date of this policy. [¶] (4) *A claim for damages because of 'bodily injury' or 'property damage' is first made against the insured during the policy period shown in the declarations, and is reported to us promptly during the policy period. . . . A 'claim' is deemed first made against the insured when the insured first receives notice of it. A 'claim' is deemed reported to us on the date we receive written notice of it.*" (Italics added.)

Citing rules of grammatical construction, Yu argues that because there is a semicolon between each of the three conditions set forth in Section I paragraphs 1.b.(1) through (3), and the list ends with a period, these three conditions are "connected" and must all be met for an "occurrence" to be covered under the policy. Yu asserts that because the fourth condition follows a period and is not connected to the preceding list with an "and" or "or," it is not clear whether the fourth condition must be satisfied along

5

with the first three or is, instead, a "stand alone" requirement that is an "alternative" basis for coverage. Moreover, Yu argues that because ambiguous terms in an insurance policy must be construed against the drafter, and should always be construed in favor of greater coverage for the insured, the trial court erred in concluding all four conditions in Section I paragraphs 1.b.(1) through (4) must be met. In strictly linguistic terms, Yu contends the trial court erred by implying an "and" between the third and fourth conditions when "or" was the proper choice.

We are not convinced. The policy is not reasonably susceptible to the interpretation Yu suggests. The first problem with her interpretation is that divorcing the "claim- made and reported" requirement in Section I paragraph 1.b.(4) from the three "occurrence" based conditions paragraphs 1.b.(1) through (3) would render meaningless the legend warning the policy provided "claim-made and reported coverage."

The second, and greater problem, is that Yu's interpretation would produce the bizarre result of a coverage grant untethered to the fundamental requirement of a policy-defined "occurrence." If, as Yu asserts, satisfying the requirements of Section I paragraph 1.b.(4) were an *alternative* to compliance with paragraphs 1.b.(1)-(3), then coverage would apply to *any* claim, even injury or damage caused by an insured's intentional acts, so long as the claim was made for the first time during the policy period and reported before expiration of the extended reporting period. Such an interpretation renders meaningless numerous provisions in the policy defining a covered "occurrence" and establishing the coverage limits for each "occurrence." (See, e.g., the declaration page and the policy's "Limits of Insurance" provision.) Thus, the interpretation Yu advocates is not merely unreasonable, it is patently absurd.

Yu also complains the trial court failed to interpret the policy in accord with the insured's "reasonable expectations" of coverage. She contends extrinsic evidence submitted in opposition to the summary judgment motion proved H2O intended to obtain "occurrence" coverage rather than "claims-made and reported" coverage. Yu

points specifically to evidence H2O applied for occurrence coverage, that it had occurrence coverage for several years before it obtained this policy, and that an internal audit by Century confirmed the policy issued to H2O conformed to its application. Yu contends the trial court improperly disregarded this evidence in interpreting the policy as a claims-made and reported policy. The argument lacks merit.

As explained above, the aim of contract interpretation is to "'give effect to the "mutual intention" of the parties'" at the time the contract was formed. (*E.M.M.I*, *supra*, 32 Cal.4th at p. 470.) That intent "'is to be inferred, if possible, solely from the written provisions of the contract.'" (*Ibid.*) Here, because the policy is not ambiguous, we can infer the parties' intent from the policy itself. Like the trial court, we conclude from the plain language of the "Insuring Agreement" set forth above, that the parties intended the policy to cover any claim for an "occurrence" meeting the conditions in Section I paragraphs 1.b.(1) through (3), which was also first made and reported during the policy period.

*3. The "Suit" Reporting Provisions Do Not Create an Independent Basis for Coverage*

Citing a different policy provision entirely, Yu offers another, even more tenuous basis for finding the H2O claim covered under the policy.

Yu bases her argument on the policy provision which sets forth the insured's duty to report an occurrence, claim or suit "as soon as practicable." That provision contained in Section IV of the policy states in pertinent part as follows: "3. Duties In The Event Of Occurrence, Offense, Claim Or Suit. [¶] . . . [¶] b. If a claim is made or 'suit' is brought against any insured, you must: [¶] (1) Immediately record the specifics of the claim or 'suit' and the date received; and [¶] (2) Notify us as soon as practicable. . . ."

Yu argues that because H2O notified Century promptly after the suit was filed, it met the requirement of this provision, thereby triggering the insurer's duty to defend. In other words, Yu argues the "claim reporting" requirement under Section I paragraph

7

1.b.(4) does not apply so long as the resulting lawsuit — whenever it is filed — is reported timely.

This argument borders on the frivolous. A suit is a claim that must satisfy the requirements of Section I paragraph 1.b.(4) for coverage to apply. Century aptly points out that the duty to report timely a "suit" is an *additional condition* on coverage; it is not a separate grant or basis of coverage. While the "suit" may have been timely reported under paragraph 3.b., it did not meet the policy's requirements for a timely-made claim under paragraph 1.b., and thus did not trigger coverage or a duty to defend.

### 4. *No Showing of Prejudice Was Required*

Yu next contends an insurer cannot deny coverage for late notice of a claim absent prejudice, and Century was not prejudiced by the late reporting here. However, Yu admits this "notice prejudice rule" applies only to "occurrence" policies, and not "claims-made" policies. And again, the trial court properly found the policy here was a "claim-made and reported" policy. It follows no showing of prejudice was required to enforce the claims reporting condition. (See *Pacific Employers*, *supra*, 221 Cal.App.3d at pp. 1358-1359 [refusing to apply "'notice prejudice rule'" to claims-made policies because it would give insureds "*extension of coverage . . .* gratis," improperly rewriting the contract].) "'An insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected.'" (*National Ins. Underwriters v. Carter* (1976) 17 Cal.3d 380, 386; *Pacific Employers*, *supra*, 221 Cal.App.3d at p. 1359.)

### 5. *Equity Does Not Warrant Relief*

Finally, Yu argues the trial court should have found a triable issue of fact as to whether the balance of equities here favored protecting H2O from the "forfeiture" that resulted from denial of coverage. Century aptly responds that equity has no role where, as here, there was a "claims-made and reported" policy and the claim in issue was not made or reported until almost three years after the policy period expired.

**DISPOSITION**

The judgment is affirmed.  Century is awarded costs on appeal.


THOMPSON, J.

WE CONCUR:


MOORE, Acting P. J.


ARONSON, J.